# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

   vs.                                         Cr. No. 13-966 JCH

MATTHEW CHANNON, and
BRANDI CHANNON,

        Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on seven motions: *Defendants' Joint Motion for a Bill of Particulars* [Doc. 50]; *Defendants' Joint Motion To Suppress Computer Evidence* [Doc. 104]; *Defendants' Joint Motion for Specification of Co-Conspirator Statements and a Pre-Trial Hearing on the Statements' Admissibility* [Doc. 49]; *Defendant's Motion To Sever Counts 7-10 from Count 11 and Supporting Authorities* [Doc. 54]; *Defendants' Motion To Dismiss for Selective Prosecution and Supporting Authorities* [Doc. 51]; *Defendants' Joint Motion To Dismiss* [Doc. 56]; and *Defendants' Motion To Sever Defendants and Supporting Authorities* [Doc. 55].

Having considered the motions, briefs, and relevant law, the Court concludes that these motions should be denied.

## BACKGROUND

On March 27, 2013, the Government obtained an eight-page Indictment against Defendants.  [Doc. 2, filed 3/27/13]  Counts 1 through 6 are against Matthew Channon; Counts 7 through 11 are against both Mathew Channon and Brandi Channon.

## I.  Defendants' Joint Motion for a Bill of Particulars [Doc. 50]

The Court first considers *Defendants' Joint Motion for a Bill of Particulars.*  [Doc. 50]  The Government filed a response [Doc. 60], and Defendants filed a reply [Doc. 72].  Having reviewed the motion, briefs, and relevant law, the Court concludes that the motion should be denied.

An indictment is required to be "a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c).  "'An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense.'"  *United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir. 2006) (quoting *United States v. Dashney*, 117 F.3d 1197, 1205 (10th Cir. 1997)).  Setting forth the offense in the words of the statute is generally sufficient, provided that the elements of the offense are stated.  *United States v. Bedonie*, 913 F.2d 782, 791 (10th Cir. 1990).  In addition, the indictment against Defendants includes the dates and further details of the illegal activity.  *See United States v. Dunn*, 841 F.2d 1026, 1029 (10th Cir. 1988).  "An indictment need not go further and allege 'in detail the factual proof that will be relied upon to support the charges.'"  *Id.* (quoting *United States v. Crippen*, 579 F.2d 340, 342 (5th Cir. 1978)).

The purpose of a bill of particulars is to inform the defendants of the charges against them "with sufficient precision" to allow them to prepare their defense.  *United States v. Levine*, 983 F.2d 165, 166-67 (10th Cir. 1992) (internal quotation marks omitted).  The decision of whether to grant a motion for a bill of particulars is left to the discretion of the district court.  *Id.* at 166.

A bill of particulars is not warranted if "'the indictment sets forth the elements of the offense charged and sufficiently apprised the defendant of the charges to enable him to prepare for trial.'"  *Id.* at 167 (quoting *Dunn*, 841 F.2d at 1030).  Emphasizing the distinction between "evidence" and "theory," the Tenth Circuit stated:  "Since the defendant is not entitled to know all the *evidence* the government intends to produce, but only the *theory* of the government's case, the district court [does] not abuse its discretion in denying defendant's motion for a bill of particulars where defendant has been served with a sufficient indictment."  *Id.* (internal quotation marks omitted).

To convict Defendants of wire fraud under 18 U.S.C. § 1343, the Government must show "(1) a scheme or artifice to defraud or obtain property by means of false or fraudulent pretenses, representations, or promises, (2) an intent to defraud, and (3) use of interstate wire or radio communications to execute the scheme."  *United States v. Gordon*, 710 F.3d 1124, 1147 (10th Cir. 2013) (internal quotation marks omitted); *see United States v. Gallant*, 537 F.3d 1202, 1228 (10th Cir. 2008).  "'A scheme to defraud focuses on the intended end result and affirmative misrepresentations are not essential; by contrast a scheme to obtain money by false pretenses, representations or promises focuses instead on the means by which the money is obtained and particular false pretenses, representations or promises must be proved.'"  *Gallant*, 537 F.3d at 1228 (quoting *United States v. Cochran*, 109 F.3d 660, 664 (10th Cir. 1997)).  The latter

alternative requires proof of false pretenses, representations, or promises, which must also be proved to be "material." *United States v. Battles*, 745 F.3d 436, 454 (10th Cir. 2014); *see Neder v. United States*, 527 U.S. 1, 25 (1999) (holding that false representations must be material); *Use Note to Pattern Crim. Jury Instr.* § 2.57 (2011).

Federal Rule of Criminal Procedure 7(f) allows a defendant to move for a bill of particulars "before or within 14 days after arraignment or at a later time if the court permits." The Government argues that the Court should deny the motion because it is untimely. [Doc. 60, p. 5] Defendants were arraigned on April 12, 2013. [Docs. 9, 10] Defendants' motion, filed on January 27, 2014, is nine months late. Defendants fail to provide justification for such an untimely filing.

Defendants claim that they need a bill of particulars for several reasons.

First, Defendants claim that they do not know why the Government believes that the alleged contract violations are criminal in nature, suggesting that if OfficeMax did not bring a civil suit alleging that it was damaged, there must have been no criminal offense either. Defendants cite no legal authority in support of this argument, and the Court therefore need not address it. *See Arizona Pub. Serv. Co. v. EPA*, 672 F.3d 1116, 1130 (10th Cir. 2009); *United States v. Stout*, 439 Fed. Appx. 738, 744 n.4 (10th Cir. 2011) (unpublished).[1] The Court observes, however, that the decision whether to prosecute for a criminal offense is entrusted to the U.S. Attorney's Office, and not to a private party. The pursuit of a potential civil claim by a victim has no impact.

Second, Defendants claim that they "are unable to determine what money or property they are alleged to have obtained by the purported wire transmission alleged in the Indictment."

---

[1] The Court cites this and other unpublished opinions for their persuasive value. *See* 10th Cir. R. 32.1(A).

[Doc. 50, p. 6]  Defendants appear to suggest that § 1343 requires that they received money or property in such wire transmissions.  This argument rests on a misunderstanding of the role of wire transmissions in the offense of wire fraud.  § 1343 requires that the wire transmissions be "'part of the execution of the scheme,'" but the transmissions "need not be at the heart of a scheme, nor necessary or even helpful for its success."  *United States v. Redcorn*, 528 F.3d 727, 738 (10th Cir. 2008) (quoting *Schmuck v. United States*, 489 U.S. 705, 715 (1989)).  Instead, "a transmission is considered to be for the purpose of furthering a scheme to defraud so long as the transmission is incident to the accomplishment of an essential part of a scheme."  *Id.* (internal quotation marks omitted).  The Indictment alleges under Counts 1-6 that Defendant Matthew obtained more than $180,000 in MaxPerks rewards, and under Counts 7-10 that both Defendants obtained approximately $74,800 in MaxPerks rewards; the Indictment alleges a total of ten wire transmissions effected for the purpose of executing a scheme to defraud or obtain money or property.  The Indictment sufficiently alleges that Defendants violated § 1343 and that wire transmissions were part of the execution of the scheme.  The Court concludes that the Indictment gives Defendants sufficient notice of the Government's theory of the case; to the extent that Defendants request evidence in support of the allegations, Defendants are not entitled to such notice.  *See Levine*, 983 F.2d at 167.

Third, the motion claims that Defendants are "unable to determine what evidence demonstrates their intent to materially defraud OfficeMax."  [Doc. 50, p. 6]  But Defendants are "not entitled to notice of all of the *evidence* the government intends to produce."  *United States v. Ivy*, 83 F.3d 1266, 1281 (10th Cir. 1996).  Defendants are only entitled to notice of "the *theory* of the government's case."  *Id.*  Direct evidence of a defendant's intent is rarely available; intent may be proved by inference from circumstances and objective acts.  *United States v. Magleby*,

241 F.3d 1306, 1312 (10th Cir. 2001); *see United States v. Bailey*, 327 F.3d 1131, 1140 (10th Cir. 2003) (observing that it is difficult to prove intent to defraud from direct evidence, but intent may be proved by inference); *United States v. Prows*, 118 F.3d 686, 692 (10th Cir. 1997) (stating that intent to defraud for wire fraud offense is usually proved by inference from circumstantial evidence); *United States v. Sivigliano*, 550 Fed. Appx. 537, 539 (10th Cir. 2013) (unpublished) (stating that intent to defraud may be inferred).  The Court concludes that Defendants' request is for notice of evidence, and Defendants are not entitled to such notice.  The Court further concludes that the Indictment gives sufficient notice of the theory of the Government's case.

The Government's response states that it has provided thousands of pages of discovery to Defendants, and maintains that it has complied with its discovery obligations.  [Doc. 60, p. 4 (noting that there is an unresolved motion regarding further discovery, Doc. 57)]   When discovery supplies the information necessary to allow the defendants to prepare their defense, a bill of particulars is not warranted.  *Ivy*, 83 F.3d at 1282 (holding that discovery gave defendant tools necessary to prepare defense, and rejecting conclusory allegations of prejudice).  To the extent that Defendants contend discovery is incomplete, the Court presumes that Defendants have also raised those arguments in their separate motion for discovery [Doc. 57], which will be resolved in a separate opinion.

The Court concludes that Defendants' motion for a bill of particulars should be denied, both because the motion was filed much later than allowed by the Rules and, more important, because the Court concludes that the Indictment (together with voluminous discovery) gives Defendants sufficient notice of the charges to allow them to prepare a defense.

**II.  Defendants' Joint Motion To Suppress Computer Evidence [Doc. 104]**

The Court next considers *Defendants' Joint Motion To Suppress Computer Evidence*. [Doc. 104]  The Government filed a response [Doc. 114], and Defendants filed a reply [Doc. 116].  Having reviewed the motion, briefs, and relevant law, the Court concludes that the motion should be denied.

Defendants acknowledge that their motion was filed on April 15, 2014—while the motions deadline was January 28, 2014; Defendants observe that one basis for their motion was the disclosure of a "new search" after the motions deadline.  [Doc. 104, p. 1 n.1]  The Government observes that the Court could deny the motion as untimely as to the evidence located during Agent Boady's review in January 2012; however, the Government states that Agent Moon reviewed the evidence on February 27, 2014, and the Government does not press the timeliness issue because it perceives no prejudice.  [Doc. 114, p. 5]

Alleging violations of both the Fourth Amendment and Federal Rule of Criminal Procedure 41, Defendants move for blanket suppression of all evidence from the computers, electronic devices, and storage media seized.  As proponents of the motion, Defendants bear the burden of proof.  *See United States v. Esser*, 451 F.3d 1109, 1112 (10th Cir. 2006); *United States v. Garcia*, 707 F.3d 1190, 1196 n.4 (10th Cir. 2013) (stating proponent of motion to suppress for violation of Rule 41 or warrant bears burden of proof); *United States v. Christie*, 717 F.3d 1156, 1163 (10th Cir. 2013) (stating proponent of motion to suppress under Fourth Amendment bears burden of proof).

Defendants raise three issues, claiming that:  (A)  the computers were "searched" in an untimely manner, about two years after they were seized;  (B) there was a "second search" requiring a second search warrant; and (C) the searches exceeded the scope of the warrant.

### A.  Timeliness of Search

The search warrant was issued on June 27, 2011, and was to be executed on or before July 7, 2011.[2]  [Doc. 104-2, p. 1]  The search warrant was executed on June 28, 2011.  [Doc. 104-2, p. 2]  The items seized included:   computers, hard drives, cell phones, and flash storage devices.  [Doc. 104-2, pp. 3-5]  The parties agree that all but two computers were returned to Defendants by October 2013.  [Doc. 114, p. 3 n.1; Doc. 104, pp. 12-13]  The two computers retained were tagged as QAQ37 and QAQ31_2.  [Doc. 114, p. 3 n.1; Doc. 114-2, p. 2 (Item 29, and the second item listed under Item 22)]

Defendants assert prejudice to their possessory and financial interests, asserting that they were deprived of their electronic equipment "while that property depreciated and lost value." [Doc. 104, p. 13]  Defendants' motion asserts that there was "grossly negligent or deliberate" delay and "bad faith," asserting that the Government "deliberately ignored the requirement to diligently conduct the search … and conducted a second search without authorization."  [Doc. 104, pp. 14-15]  To the extent that the allegations of gross negligence and bad faith are based on the allegation of an unconstitutional second search, the Court concludes in the following section that there was no unconstitutional second search.  In this section the Court will conclude that Defendants' allegations based on the passage of time do not justify suppression of evidence, either.

The Government's response explains that the FBI was making a transition from in-house forensic analysis of computers to analysis by NMRCFL, a Regional Computer Forensics Laboratory.  [Doc. 114, p. 2]  The response states that delay was caused by a backlog at NMRCFL, which had only one examiner qualified for Macintosh computers, and that this case

---

[2] Although no year is stated with the date of execution, the only reasonable interpretation is that the year was 2011.

did not merit priority status compared to other cases awaiting forensic analysis by that laboratory.  [Doc. 114, p. 3]

Defendants' motion asserts that no search was performed on these computers until two years after they were seized, relying on a statement made at a status conference; the minutes of that conference, however, do not relate such a statement.  [Doc. 104, p. 4 (citing Doc. 33 (minutes of 7/9/13 status conference))]  Citing attached reports by Bales and Boady showing analyses in January 2012, the Government's response asserts that initial review began less than seven months after seizure.  [Doc. 114, p. 3 & n.2; Doc. 114-2, p. 2; Doc. 114-3]  Defendants' reply does not dispute this assertion, nor do Defendants dispute the genuineness or accuracy of these two exhibits; instead, Defendants' reply asserts that the delay was "many months" instead of two years.  [Doc. 116, pp. 1-3]  It appears that Defendants have now indicated they agree that the process of review began just seven months after the seizure.

It is unnecessary, however, for the Court to decide whether the delay was seven months or two years.  In either case, Defendants fail to justify their request for blanket suppression of all computer evidence based on the passage of time.

The Government argues that Defendants' assertions show no violation of Rule 41.  The Court agrees.  The search warrant was executed on June 28, 2011, within the time set; Rule 41 allows later off-site review and sets no time limit for that review.  In addition, even if Defendants had asserted acts violating the Rule, Defendants fail to assert the type of prejudice warranting exclusion of all computer evidence.  *See United States v. Burgess*, 576 F.3d 1078, 1097 (10th Cir. 2009).

Defendants acknowledge that the search warrant affidavit specifically requested permission to seize the computers and to search them later, off-site.  [Doc. 104-1, pp. 30-35]

Defendants also acknowledge that Federal Rule of Criminal Procedure 41(e)(2)(B) expressly permits additional time for off-site review of computers. Because "[c]omputers and other electronic storage media commonly contain such large amounts of information," Rule 41 allows a "two-step process" in which officers may seize a computer "and review it later to determine what electronically stored information falls within the scope of the warrant." Fed. R. Crim. P. 41(e)(2) advisory committee's note to 2009 amendment.

"The time for executing the warrant in Rule 41(e)(2)(A) and (f)(1)(A) refers to the seizure or on-site copying of the media or information, and not to any later off-site copying or review." *Id.* As the Government points out, the Advisory Committee declined to set any time period for later off-site review:

> While consideration was given to a presumptive national or uniform time period within which any subsequent off-site copying or review of the media or electronically stored information would take place, the practical reality is that there is no basis for a "one size fits all" presumptive period. A substantial amount of time can be involved in the forensic imaging and review of information. This is due to the sheer size of the storage capacity of media, difficulties created by encryption and booby traps, and the workload of the computer labs. The rule does not prevent a judge from imposing a deadline for the return of the storage media or access to the electronically stored information at the time the warrant is issued. However, to arbitrarily set a presumptive time period for the return could result in frequent petitions to the court for additional time.

Fed. R. Crim. P. 41(e)(2) advisory committee's note to 2009 amendment. With regard to the time for review of the computers in this case, the Court notes that there was apparently a large volume of information involved; the parties note exchange of thousands of pages of discovery.

Defendants bear the burden of showing prejudice or intentional violation of Rule 41. *See Garcia*, 707 F.3d at 1196 n.4. A violation of Rule 41 alone "'should not lead to exclusion unless (1) there was prejudice in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and

deliberate disregard of a provision in the Rule.'"  *Burgess*, 576 F.3d at 1097 (quoting *United States v. Sims*, 428 F.3d 945, 955 (10th Cir. 2005)).  Defendants fail to allege either this type of prejudice or any "intentional and deliberate disregard of a provision in the Rule."  The Rule establishes no time limit for the later off-site review.   The Court is persuaded by the Government's argument that the Rule is intended to prevent searches based on stale information, and that staleness is not a concern here because, once the computers in this case were seized, any evidence contained would continue to exist.  *See Burgess*, 576 F.3d at 1097; *United States v. Syphers*, 426 F.3d 461, 469 (1st Cir. 2005).

In *Burgess*, the Tenth Circuit held that there was no plain error when there was a forty-four-day delay in searching a computer.  *Burgess*, 576 F.3d at 1096-97.  The Tenth Circuit stated that the purpose of Rule 41's time limits is to ensure that probable cause continues to exist.  *Id.* at 1097.   But when a computer is seized, the probable cause justifying issuance of the search warrant persists during the time the computer remains in the government's possession:  "Probable cause to search was unaffected by the delay and the reasons to search the computer and hard drives did not dissipate during the month and a half items sat in an evidence locker."  *Id.* Thus there was no violation of Rule 41.  *Id.*  In addition, the Tenth Circuit stated that the defendant did not identify any prejudice from the delay—"in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed."  *Id.* at 1097. The defendant's assertion that he was temporarily denied access to his property was not cognizable prejudice under Rule 41.  *Id.*

Although the delay was much shorter in *Burgess* and the Tenth Circuit was reviewing only for plain error, the Tenth Circuit's reasoning supports denial of Defendants' motion in the case before the Court.   Since probable cause did not dissipate while the Government had

possession of the two computers, there was no violation of Rule 41.  As in *Burgess*, Defendants' allegation of infringement of their possessory interest does not constitute cognizable prejudice under Rule 41.  Since there was probable cause to search the computers, regardless of the passage of time, and since Defendants identified no cognizable prejudice, the Court will deny Defendants' motion to suppress under Rule 41.

The ultimate question under the Fourth Amendment is whether a search or seizure was reasonable.  *See Bradford v. Wiggins*, 516 F.3d 1189, 1196 (10th Cir. 2008); *Burgess*, 576 F.3d at 1087.  The Supreme Court has "repeatedly refused to declare that only the 'least intrusive' search practicable can be reasonable under the Fourth Amendment."  *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 663 (1995).  When addressing the timeliness of execution of a search warrant, the Tenth Circuit observes that the focus is whether there is still probable cause to believe the evidence sought will be found.  *United States v. Garcia*, 707 F.3d 1190, 1194 (10th Cir. 2013).  Even a "substantial delay" in execution of a warrant may be acceptable when the evidence is still likely to be in the place searched.  *Garcia*, 707 F.3d at 1195.

Since the computers in Defendants' case continued in the Government's possession, the probable cause justifying the search warrant continued to exist.  The Tenth Circuit's opinion in *Burgess* supports denial of the motion to suppress under the Fourth Amendment, for the same reasons it supports denial under Rule 41.  Probable cause was "unaffected by the delay."  *Burgess*, 576 F.3d at 1097; *see Garcia*, 707 F.3d at 1195.  Since probable cause did not dissipate, the later search or review of Defendants' computers was still reasonable under the Fourth Amendment.  The reasoning of the Tenth Circuit in *Burgess* again supports denial of the suppression motion in Defendants' case, even though the delay in *Burgess* was shorter and the review was for plain error.

12

In *Christie*, the Tenth Circuit indicated that the same conclusion should follow even on a much longer delay. *United States v. Christie*, 717 F.3d 1156, 1162 (10th Cir. 2013). The Tenth Circuit recognized that while unreasonable delay in obtaining a warrant may sometimes violate the Fourth Amendment, a court must consider the totality of the circumstances, balancing "'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests.'" *Id.* at 1162 (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)). The court must be "wary of the temptation to impose 'rigid rules, bright-line tests, and mechanistic inquiries.'" *Id.* (quoting *Florida v. Harris*, ___ U.S. ___, ___, 133 S. Ct. 1050, 1055, 185 L. Ed. 2d 61 (2013)). In *Christie*, the government took possession of the defendant's computer with the consent of her husband. *Id.* at 1162. Five months later the government obtained a search warrant; three years later the government obtained a second search warrant for a more thorough search of that computer. *Id.* at 1162, 1164. The Tenth Circuit indicated that even the three-year delay did not violate the Fourth Amendment, suggesting that the defendant had no interest that could be impaired "by the timing of that second search" when the computer remained in the government's possession pending trial. *Id.* at 1167.

*Burgess* cited with approval a First Circuit case concluding that a long delay did not violate the Fourth Amendment under similar circumstances. *Burgess*, 576 F.3d at 1097 (citing *United States v. Syphers*, 426 F.3d 461, 469 (1st Cir. 2005)). In *Syphers*, the First Circuit focused on whether probable cause persisted during a one-year extension of time to search a computer in police possession pursuant to a warrant. *Syphers*, 426 F.3d at 469. The First Circuit cited with approval a case allowing a ten-month delay, reasoning that delay in searching computers is reasonable because of the complexity of the search. *Id.* Since the computer was

already in the government's possession, the Court concluded that the delay could not cause "a lapse in probable cause" and was "wholly unrelated to the probable cause determination." *Id.*

The Eighth Circuit reached the same conclusion, finding no Fourth Amendment violation in a one-year delay in searching a laptop after seizure. *United States v. Gregoire*, 638 F.3d 962, 967-68 (8th Cir. 2011). Characterizing the defendant's argument as "without merit," the Eighth Circuit relied on its earlier opinion in *United States v. Brewer*, 588 F.3d 1165, 1173 (8th Cir. 2009). *Brewer* held that a court should only consider whether a delay in forensic analysis of computers after seizure rendered the warrant stale; since such delay has no effect on probable cause, there is no Fourth Amendment violation. *Id.*

Based on the reasoning and analysis of these cases, the Court concludes that, because the continued existence of probable cause to search Defendants' computers was unaffected by the passage of time, Defendants' allegations about the delay in forensically analyzing the computers do not assert a Fourth Amendment violation.

There is an additional and alternative basis for this conclusion.

There are two sets of electronic equipment involved here. First are the two computers that the Government asserts contain evidence of the offenses charged. [Doc. 114, p. 3 n.1] Second is the remainder of the electronic devices seized.

The Government asserts that two computers (QAQ37 and QAQ31_2) constitute both instrumentalities for committing the offenses and storage places for evidence of the offenses. [Doc. 114, p. 1] After the Government seized the computers pursuant to the warrant and found incriminating evidence, it was "presumptively entitled to retain the computer[s]" until after trial. *Christie*, 717 F.3d at 1167. "'[T]he general rule is that' lawfully seized property bearing evidence relevant to trial 'should be returned to its rightful owner once the criminal proceedings have

terminated,' <u>not before</u>."  *Id.* (emphasis added) (quoting *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1212 (10th Cir. 2001)).  As in *Christie*, Defendants have given the Court "no reason to think [their] case an exception to this general rule." *Christie*, 717 F.3d at 1167.

As the Government observes, to the extent Defendants assert harm to their possessory interest in these two computers, Federal Rule of Criminal Procedure 41(g) establishes a procedure to move for return of property. *See Gregoire*, 638 F.3d at 968.  Such a motion is governed by equitable principles, however, and the Tenth Circuit cautioned that jurisdiction "'should be exercised with caution and restraint'" and the Rule sets a demanding standard. *Frazee v. IRS*, 947 F.2d 448, 449 (10th Cir. 1991) (observing that the movant must establish irreparable injury and no adequate remedy at law).  The Advisory Committee Notes to Rule 41 state that "reasonableness under all of the circumstances must be the test when a person seeks to obtain the return of property."  "If the United States has a need for the property in an investigation or prosecution, its retention of the property generally is reasonable." Fed. R. Crim. P. 41 advisory committee's note to 1989 amendment.  Defendants bear the burden under Rule 41(g) of demonstrating that the Government's retention of the computers pending trial is unreasonable. *United States v. Nelson*, 190 Fed. Appx. 712, 714 (10th Cir. 2006) (unpublished).

Defendants failed to request return under Rule 41(g).[3]  *See United States v. Chambers*, 192 F.3d 374, 377 (3rd Cir. 1999) (holding that, when motion is made while criminal prosecution is pending, burden is on movant to show, *inter alia*, that government does not need the property as evidence).  The Court observes that the parties indicate that they have still been

---

[3] The Court recognizes that the Advisory Committee's Notes to the 2009 amendment to Rule 41(e)(2) suggest that a defendant may not be able to obtain return of property that constitutes an instrumentality of the crime; however, there was a possibility for the parties to agree to a procedure allowing the Government an alternate means of preserving its evidence for trial while returning the computers to Defendants.  The parties refer to this possibility— but state that they were unable to agree on such a procedure.  [Doc. 114, pp. 4, 10; Doc. 116, p. 3; Doc. 57, pp. 4-6; Doc. 82, pp. 1-5; Doc. 92, pp. 1-4]

unable to resolve issues regarding use of the computers themselves or copies of the hard drives in discovery, much less as evidence at trial; Defendants made a motion to resolve computer discovery issues.  [Doc. 114, pp. 4, 10; Doc. 116, p. 3; Doc. 57, pp. 4-6; Doc. 82, pp. 1-5; Doc. 92, pp. 1-4]   The Court concludes that Defendants fail to demonstrate that their mere possessory interest in the two computers outweighs the Government's important interest in retaining the two computers for use at trial.  In addition, if the computers were returned, at trial the Government might face additional challenges to the authenticity and reliability of the evidence.

With regard to the remainder of the electronic devices seized, Defendants cite their possessory and financial interest.  The parties agree that these items were returned to them by October 2013.  [Doc. 114, p. 3 n.1; Doc. 104, pp. 12-13]   But again there was a procedure available, which Defendants did not employ, to request earlier return of this property.   As the Advisory Committee Notes to the 2009 amendment to Rule 41(e)(2) state, the Rule provides a remedy under these circumstances:

> It was not the intent of the amendment to leave the property owner without an expectation of the timing for return of the property, excluding contraband or instrumentalities of crime, or a remedy. Current Rule 41(g) already provides a process for the "person aggrieved" to seek an order from the court for a return of the property, including storage media or electronically stored information, under reasonable circumstances.

Defendants assert that this remedy was not available until after the Indictment was filed.  [Doc. 116, p. 4]  Rule 41(g), however, contains no such limitation.  The Court concludes that Rule 41(g) provides adequate protection, and adequate procedure, to protect Defendants' possessory and financial interest.  Defendants could have availed themselves of this procedure.  The fact that they did not do so provides no justification for suppression of evidence from the two computers.

Defendants have not cited persuasive authority to show that the later reviews of the computers were unreasonable under the Fourth Amendment.  Relevant to the reasonableness of

the time taken, the Court again notes that a large volume of information was involved; the parties note exchange of thousands of pages of discovery. *Cf.* Rule 41(e)(2) advisory committee's note to 2009 amendment (recognizing that a substantial amount of time can be involved in forensic imaging and review, due to sheer size of storage capacity, difficulties created by encryption and booby traps, and computer lab's workload). The Court takes into account that this fact affects not only the amount of time consumed in the review, but presumably also the computer lab's ability to schedule the substantial blocks of time required. *See id.*

Defendants cite a discussion in *Burgess* of *United States v. Mitchell*, 565 F.3d 1347, 1351 (11th Cir. 2009). *See Burgess*, 576 F.3d at 1097. Defendants assert in a parenthetical that *Mitchell* shows that "delayed searches impairing a privacy or possessory interest are unreasonable." [Doc. 104, p. 7] But this broad statement is not supported by that discussion; the problem in *Mitchell* was that the hard drive was seized and held for more than three weeks *before* a warrant was sought. It was in this very different context that the Tenth Circuit observed that the delay was unreasonable. *Burgess*, 576 F.3d at 1097. This observation does not aid Defendants, because the situations are distinguished on the critical circumstance: the delay in Defendants' case was after the warrant was obtained.

Defendants rely on a decision from a New York district court, *United States v. Metter*, 860 F. Supp. 2d 205, 215-16 (E.D.N.Y. 2012). [Doc. 104, pp. 7-8] *Metter* is distinguished on critical points. The *Metter* court stated that the government had "no plans whatsoever to *begin* review," delayed for more than fifteen months, and then proposed to release computer data to all defendants without regard for the irrelevant and private information it would be disseminating. *Id.* The New York court found that the government failed to act in good faith, showing "utter disregard for and relinquishment of its duty to insure that its warrants are executed properly,"

and failed to argue that limited resources caused the delay. *Id.* The *Metter* court also cautioned that such determinations are fact-intensive and case-specific. *Id.* at 212. *Metter* is distinguished on critical factual findings made there. The Court does not find the reasoning or analysis of *Metter* persuasive for Defendants' case.

Having considered all of the circumstances, the Court concludes that it was reasonable for the Government to retain possession of the computers pending resolution of this prosecution. Defendants fail to convince the Court that their case is an exception to the general rule that the Government may retain property bearing evidence until after criminal proceedings have terminated. *See Christie*, 717 F.3d at 1167. In *Christie*, the Tenth Circuit concluded that since the defendant had no right to return of her computer until after trial, the defendant could not show that any delay in conducting a second search of that computer caused any prejudice to her interests. *Id.* As in *Christie*, since Defendants have no right to the computers' return until after trial, the Court rejects their argument that any delay violated Defendants' Fourth Amendment rights.

To the extent that Defendants' allegations of gross negligence and bad faith are based on the passage of time, the Court disagrees. The Court concludes that Defendants' allegations and authority fail to support their argument for suppression. *See Garcia*, 707 F.3d at 1196 n.4 (holding that movant bears burden of proof).

**B. Second Search**

Defendants assert that there was a second search when the computers were re-examined on February 24, 2014, which was unconstitutional without a second search warrant. [Doc. 104, pp. 4, 11] The Government responds that continued review of the computers did not require a new search warrant. [Doc. 114, pp. 12-13]

Defendants acknowledge that Federal Rule of Criminal Procedure 41(e)(2)(B) specifically "authorizes a later review of the media or information consistent with the warrant." Defendants do not assert that later reviews of the computers were attempts to find evidence of different offenses, not consistent with the purpose authorized by the search warrant. Defendants' reliance on *Carey* is misplaced; in *Carey* a second warrant was required because the later review was to find evidence of a different offense, beyond the scope of the original search warrant. *United States v. Carey*, 172 F.3d 1268, 1275-1276 (10th Cir. 1999); *see Burgess*, 576 F.3d at 1092 (limiting *Carey*).

When a computer is subsequently reviewed following seizure pursuant to a warrant, the subsequent review does not constitute a second search requiring a second search warrant, when review is limited to discovering evidence of the same type that justified the search warrant. *United States v. Grimmett*, 439 F.3d 1263, 1268-69 (10th Cir. 2006); *see United States v. Upham*, 168 F.3d 532, 535 (1st Cir. 1999) (cited with approval in *Grimmett*, and holding that second search warrant for off-premises search of computer not required, because justified by same probable cause supporting original search warrant); *United States v. Richards*, 659 F.3d 527, 539 n.10 (6th Cir. 2011) (observing that federal courts do not require second warrant to search computer for evidence within scope of original search warrant).

In *Grimmett*, the search warrant authorized seizure of a computer and subsequent review of that computer, off-site, for evidence of child pornography. *Grimmett*, 439 F.3d at 1268. No second warrant was required in *Grimmett* because the subsequent review was already authorized by the original search warrant. *Id.* at 1269; *see United States v. Simpson*, 152 F.3d 1241, 1248 (10th Cir. 1998) (holding second warrant not required to search computer). The Tenth Circuit distinguished *Carey*, because in *Carey* the later review was to discover evidence of a different

19

offense. *Carey*, 172 F.3d at 1270-76 (recognizing that search warrant was for evidence of sale and distribution of controlled substances, while agent looked for evidence of child pornography without obtaining second search warrant).

As in *Grimmett*, the subsequent analysis of Defendants' computers was for evidence of the same offenses that supported the search warrant. As in *Grimmett*, the search warrant affidavit specifically stated that examination of the computer would be conducted off-site. *Grimmett*, 439 F.3d at 1269. The Court concludes that subsequent review of Defendants' computers did not require a second search warrant. There is no significant distinction between *Grimmett* and Defendants' case, although in Defendants' case there was more than one subsequent review.

This conclusion finds additional support in the Tenth Circuit's observation in *Christie* that the defendant had no interest that could be impaired by a second "search" of a computer, when the government had the right to retain the computer until after trial. *Christie*, 717 F.3d at 1162. In *Christie*, the government took possession of the computer with consent of the defendant's husband. *Id*. at 1162. Five months later the government obtained a search warrant, and three years later obtained a second warrant to conduct a more thorough search. *Id*. at 1162, 1164. The government found incriminating evidence when executing the first search warrant, and was thus entitled to retain the computer until after trial. *Id*. at 1167. The defendant challenged the three-year delay in obtaining the second search warrant, but the Tenth Circuit perceived no impairment of the defendant's interests from the delay between the first and second warrants—and, further, indicated that the second search itself did not impair the defendant's interests:

> And without a right to the computer's return until after trial, it's hard to see how she had <u>any interest that could be impaired by a second</u> (and itself otherwise lawful) <u>search during the period of the government's lawful possession</u>, let alone

by the timing of that second search.  Neither does Ms. Christie identify any
authority or reason suggesting otherwise.

*Id*. (emphasis added).  Although the details of *Christie* differ, the critical facts are the same in
both cases:  the government had possession of the computer, was entitled to retain the computer
until after trial, and performed a second search some time after taking possession.  There was no
violation of the Fourth Amendment.  *See id.*  Although the government had obtained a second
search warrant in *Christie*, in the language emphasized above the Tenth Circuit suggests that a
second warrant would not have been required.

### C.  Exceeding Scope of Search

A warrant allowing search of all computer records without description or limitation
would not meet the Fourth Amendment's particularity requirement; instead, a search warrant for
a computer must limit the search to evidence of specific crimes or specific types of material.
*Burgess*, 576 F.3d at 1091.  In *Burgess*, the Tenth Circuit held that a search warrant contained
sufficiently particularized language when it authorized a search for evidence of drugs and drug
trafficking.  *Id.*; *see Christie*, 717 F.3d at 1165 (recognizing that warrants pass particularity test if
they limit their scope to evidence of specific crimes or specific types of material).

In the case before the Court, the search warrant refers to Attachment B, the affidavit, for
specification of the items for which to search.  [Doc. 104-2, p. 1]  Attachment B specifies a
search for "[a]ll records, in any form, relating to violations of 18 U.S.C. § 1341 (mail fraud) and
18 U.S.C. § 1343 (wire fraud)" of "[a]ny computers or electronic media that were or may have
been used as a means to commit the offenses described on the warrant."  [Doc. 104-1, p. 39]  The
scope of the computer records subject to search in this case is limited by the affidavit and
Attachment B.  [Docs. 104-1, 104-2]  The search warrant meets the Fourth Amendment
particularity requirement.  *See Burgess*, 576 F.3d at 1091-92; *Grimmett*, 439 F.3d at 1269.

While officers "'must be clear as to what it is they are seeking on the computer and conduct the search in a way that avoids searching files of types not identified in the warrant,' … a computer search 'may be as extensive as reasonably required to locate the items described in the warrant.'" *Grimmett*, 439 F.3d at 1270 (quoting *United States v. Walser*, 275 F.3d 981, 986 (10th Cir. 2001)). The Tenth Circuit "'has never required warrants to contain a particularized computer search strategy.'" *Burgess*, 576 F.3d at 1092 (quoting *United States v. Brooks*, 427 F.3d 1246, 1251 (10th Cir. 2005)). Defendants rely on *Carey* in arguing that officers must employ a particular search method. Defendants' reliance is misplaced. *Burgess* emphasized that "the *Carey* holding was limited" and language in *Carey* suggesting methods to constrain searches constitutes dictum. *Burgess*, 576 F.3d at 1092.

In *Burgess*, the defendant argued that the scope of the search violated the Fourth Amendment because of the search methods used. *Id*. at 1092. The Tenth Circuit disagreed, holding that there was no violation. *Id.* at 1095.

As in *Burgess*, the search of Defendants' computers was limited not by type of file, but by content. *Id*. at 1093. Such files could take many forms. *Id*. "It is unrealistic to expect a warrant to prospectively restrict the scope of a search by directory, filename or extension or to attempt to structure search methods—that process must remain dynamic." *Id*. "In summary, it is folly for a search warrant to attempt to structure the mechanics of the search and a warrant imposing such limits would unduly restrict legitimate search objectives." *Id*. at 1094. "Respect for legitimate rights to privacy in papers and effects requires an officer executing a search warrant to first look in the most obvious places and as it becomes necessary to progressively move from the obvious to the obscure." *Id*. The Tenth Circuit observed that "in general a structured approach may provide only the illusion of protecting privacy interests, particularly when the search target is

image files."  *Id.* at 1095.  The Tenth Circuit stated that files could be reviewed to determine whether they were deceptively labeled, with evidence relevant to the offense buried in other files. *Id.*

Defendants assert that the Government exceeded the scope of the warrant because the searches "were performed on the *entire* images—each time the images were placed without review for the scope of the search warrant on a system permitting the case agent access to the whole image."  [Doc. 104, p. 5]  This assertion is contrary to *Grimmett* and *Burgess*.  *See Grimmett*, 439 F.3d at 1270 (holding that a computer search may be as extensive as reasonably required to locate the objects of the search); *Burgess*, 576 F.3d at 1094-95 (holding that it may be necessary to progressively review more information—looking for obscure, deceptive, and mislabeled storage sites).  And no particular search strategy need be prescribed.  *Burgess*, 576 F.3d at 1092.  Defendants also seem to assert that the search infringed on their privacy because the case agent had access to the "whole image."  Given that someone needs to look for evidence, Defendants fail to explain why that person could not be the case agent.  To the extent that Defendants assert a violation of their privacy, no argument is made that their privacy interest was infringed by the case agent looking for evidence while review by another person would not have infringed on Defendants' privacy.  The Court perceives no logical difference.

Defendants assert that the Government exceeded the scope of the warrant because "complete images of the seized electronic devices and storage media were turned over to the case agent without prior review or limitation to the scope of the warrant."  [Doc. 104, p. 11]  This assertion appears to be founded on the unsupported assumption that use of a "taint team" was obligatory.  The Court disagrees.

In support of their argument that a "taint team" should have been utilized, Defendants cite *United States v. Ary*, 518 F.3d 775, 780 (10th Cir. 2008).  [Doc. 104, pp. 4-5]  *Ary* does not support Defendants' assertion that it is "[c]ommon practice" to establish a taint team, much less show that a taint team is required by the Fourth Amendment.  In *Ary*, the defense attorney notified the prosecutor that some items seized under a search warrant were subject to attorney-client privilege; this notification was sent four days after execution of the search warrant.  *Ary*, 518 F.3d at 780.  Two weeks later, the defense attorney sent another communication to the prosecutor, specifically identifying the files and other items asserted to be privileged.  *Id.*  A taint team was established to review the identified items; after identifying privileged items, the government returned them to the defendant.  *Id.*

Defendants also cite *United States v. Carey*, 172 F.3d 1268, 1275 (10th Cir. 1999).  In *Carey*, officers obtained a search warrant for computer files containing evidence of the sale or distribution of controlled substances.  *Id.* at 1270-72.  A detective discovered an image of child pornography and then continued to search for additional child pornography files.  The Tenth Circuit held that, after discovering one image of child pornography, the detective exceeded the scope of the warrant and conducted an unconstitutional general search when he continued to search for more child pornography; a second warrant authorizing a search for child pornography should have been obtained.  *Id.* at 1276.  The Tenth Circuit emphasized that its holding was limited to the particular facts of that case.  *Id.*; *see id.* at 1276-77 (Baldock, J., concurring); *Burgess*, 576 F.3d at 1092.

These cases—*Ary* and *Carey*—do not aid Defendants.  They are distinguished on the critical points.  Defendants make no assertion of any privileged information, and make no assertion that they notified the Government of any privileged information, as required by *Ary*.

24

Defendants make no assertion that evidence of other offenses was discovered; therefore, they fail to show that *Carey* is relevant.

Defendants' allegations fail to assert a violation of Rule 41 or the Fourth Amendment.  In addition, Defendants fail to support their argument for blanket suppression.

Defendants state that improperly obtained evidence should be suppressed if the search exceeds the scope of the warrant.  [Doc. 104, p. 11]  Suppression of evidence is a "last resort." *Hudson v. Michigan*, 547 U.S. 586, 591 (2006).  The general rule when officers exceed the scope of a warrant is that "only the improperly seized evidence, not all of the evidence, must be suppressed, unless there was a flagrant disregard for the terms of the warrant." *United States v. Le*, 173 F.3d 1258, 1269 (10th Cir. 1999) (internal quotation marks omitted).  If "'law enforcement officers grossly exceed the scope of a search warrant in seizing property, the particularity requirement is undermined and a valid warrant is transformed into a general warrant thereby requiring suppression of all evidence seized under that warrant.'" *United States v. Allen*, 416 Fed. Appx. 754, 759 (10th Cir. 2011) (unpublished) (quoting *United States v. Medlin*, 842 F.2d 1194, 1199 (10th Cir. 1988)).  Since Defendants fail to identify any improperly obtained evidence, however, this general principle is not implicated here.  Defendants make only a vague, conclusory assertion that the scope of the warrant was exceeded; as the Government states, Defendants fail to identify any information seized that was not within the scope of the warrant.

Defendants nevertheless argue that all of the evidence from the computers should be suppressed.  The Tenth Circuit holds that "the extreme remedy of blanket suppression" should only be imposed in "exceedingly rare" and "the most 'extraordinary' of cases." *United States v. Foster*, 100 F.3d 846, 852 (10th Cir. 1996); *see Allen*, 416 Fed. Appx. at 759 (observing that Tenth Circuit has applied the extreme remedy of blanket suppression "sparingly").  But

Defendants' allegations fail to show any indication of a general rummaging constituting a general search, or any flagrant disregard of the terms of the warrant. *Cf. Medlin*, 842 F.2d at 1199 (holding there was flagrant disregard and ordering blanket suppression when local officers seized 667 items not identified in the search warrant—transforming an otherwise valid search warrant into a general warrant); *Foster*, 100 F.3d at 850-51 (holding that blanket suppression was proper remedy when officers seized more than 60 items not mentioned in the warrant, and one officer testified that they simply took anything of value and that was their usual procedure). Distinguishing the circumstances of *Foster* and *Medlin*, the Tenth Circuit held in *Le* that, even though some items may arguably have been improperly seized in *Le*, the proper remedy was suppression only of improperly seized items; *Le* held that blanket suppression was not warranted because the circumstances did not rise to "flagrant disregard." *Le*, 173 F.3d at 1270-71; *see Allen*, 416 Fed. Appx. at 760 (holding that improper seizure of a few items does not convert search warrant into general warrant so as to justify blanket suppression).

These three cases illustrate the extreme circumstances that constitute flagrant disregard sufficient to justify blanket suppression. Defendants do not allege any circumstances rising to the level of *Foster* and *Medlin*. Defendants fail to identify any improperly seized evidence; conclusory allegations of exceeding the scope of the warrant are not sufficient. And Defendants' assertions of infringement on their privacy and possessory interests cannot justify the extreme remedy of blanket suppression.

Although Defendants' motion failed to request an evidentiary hearing, Defendants' reply does. [Doc. 116, p. 5] The Government's response argued that no evidentiary hearing was warranted because Defendants failed to "'raise factual allegations that are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact

26

are in issue.'"  [Doc. 114, pp. 23-24 (quoting *United States v. Barajas-Chavez*, 358 F.3d 1263, 1266 (10th Cir. 2004) (internal quotation marks omitted))]    The Court agrees with the Government.

A court abuses its discretion if it denies an evidentiary hearing when the moving party has evidence justifying relief, and has not had a full and fair opportunity to present relevant facts and arguments and rebut the opponent's submission.  *See Ary*, 518 F.3d at 782 (citing *United States v. Chavez-Marquez*, 66 F.3d 259, 261 (10th Cir. 1995); *In re Grand Jury Subpoena*, 274 F.3d 563, 576 (1st Cir. 2001)).  The district court in *Ary* did not hold an evidentiary hearing; the Tenth Circuit held there was no abuse of discretion when the defendant had "a fair opportunity to present relevant facts and arguments and to counter the government's submissions."  *Ary*, 518 F.3d at 785.  The defendant's unsupported speculation was insufficient to require an evidentiary hearing.  *Id.* (also noting defendant's failure to assert privilege in a timely fashion).

Defendants assert that the Government should be required to present evidence to establish the length of and reasons for the delay, and that Defendants should be able to present evidence about their asserted prejudice.  [Doc. 116, p. 5]  First, Defendants have the burden of proof on their suppression motion, not the Government.  *See Christie*, 717 F.3d at 1163; *Garcia*, 707 F.3d at 1196 n.4.  Second, the Court finds that Defendants have had a "fair opportunity to present relevant facts and arguments and to counter the government's submissions" in their motion and reply.  *Ary*, 518 F.3d at 785.  Third, as discussed above, the Court concludes that even if Defendants' assertion of a two-year delay were correct, Defendants could not justify blanket suppression.  *See United States v. Sandoval*, 390 F.3d 1294, 1301 (10th Cir. 2004) (holding that evidentiary hearing not required when defendant's proffered facts, accepted as true, fail to show entitlement to relief requested).  Nor is an evidentiary hearing required to allow Defendants to

present evidence in support of their asserted prejudice; the types of prejudice asserted—infringement of privacy and possessory interests—are insufficient to justify the blanket suppression requested, as discussed above. *See id*. An evidentiary hearing would be futile and is therefore not warranted. As in *Ary*, speculation that the Government may have in some unexplained way exceeded the scope of the warrant does not justify an evidentiary hearing. *Ary*, 518 F.3d at 785. Defendants do not show that an evidentiary hearing is justified by making conclusory and speculative assertions of a constitutional violation. *See Sandoval*, 390 F.3d at 1301.

### D.  Conclusion on Suppression of Computer Evidence

The Court concludes that *Defendants' Joint Motion To Suppress Computer Evidence* [Doc. 104] should be denied, without an evidentiary hearing.

## III.  Defendants' Joint Motion for Specification of Co-Conspirator Statements [Doc. 49]

The Court next considers *Defendants' Joint Motion for Specification of Co-Conspirator Statements and a Pre-Trial Hearing on the Statements' Admissibility*. [Doc. 49] The Court observes that Defendants' motion admits that Defendants failed to seek the Government's position before filing. [Doc. 49, p. 3] The Government filed a response stating that it does not presently intend to introduce at trial any co-conspirator statements under Rule 801(d)(2)(E), although it does not permanently waive its right to do so if circumstances change. [Doc. 64]

Given the Government's response, the Court will deny Defendants' motion as moot at this time.

**IV.  Defendant Brandi Channon's Motion To Sever Counts 7-10 from Count 11 [Doc. 54]**

Defendant Brandi Channon filed *Defendant's Motion To Sever Counts 7-10 from Count 11 and Supporting Authorities*.  [Doc. 54]  The Government filed a response.  [Doc. 81]  Brandi filed no reply.  Having reviewed the motion, briefs, and relevant law, the Court concludes that the motion should be denied.

Two or more offenses may be joined in the same indictment and listed as separate counts if they "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."  Fed. R. Crim. P. 8(a).  The Tenth Circuit construes Rule 8 "'broadly to allow liberal joinder to enhance the efficiency of the judicial system.'"  *United States v. Jones*, 530 F.3d 1292, 1298 (10th Cir. 2008) (quoting *United States v. Johnson*, 130 F.3d 1420, 1427 (10th Cir. 1997)).  Joint trials "conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial."  *Id*. (internal quotation marks omitted).

The Court concludes that joinder of Counts 7-10 and Count 11 was proper under Rule 8.  The substantive counts (Counts 7-10) and conspiracy count (Count 11) are parts of a common scheme or plan, the Ink Recycling Scheme.

Federal Rule of Criminal Procedure 14(a) provides that a court may order separate trials of counts if "joinder of offenses … appears to prejudice a defendant or the government."  Prejudicial joinder occurs when a defendant's right to a fair trial is threatened.  *Johnson*, 130 F.3d at 1427.  A court must weigh any potential prejudice "'against the obviously important considerations of economy and expedition in judicial administration.'"  *United States v. Burkley*, 513 F.3d 1183, 1188 (10th Cir. 2008) (quoting *United States v. Dirden*, 38 F.3d 1131, 1140 (10th

Cir. 1994)).  The burden on the defendant to show abuse of discretion for denial of severance is "a difficult one."  *United States v. Valentine*, 706 F.2d 282, 290 (10th Cir. 1983); *see Johnson*, 130 F.3d at 1427.

Brandi asserts that "Count 11 charges Ms. Channon with conspiring to commit Counts 1-6, although she was not charged in Counts 1-6, and also with conspiracy to commit Counts 7-10."  [Doc. 54, p. 2, ¶ 5]  Based on this interpretation of the Indictment, Brandi asserts that "there is no apparent overlap of evidence."  [Doc. 54, p. 2, ¶ 6]

As the Government clarifies, Count 11 refers to Paragraphs 2 to 8 of the Introduction to Counts 1 to 6 only for background information.  [Doc. 2, p. 6]  Count 11 alleges the scheme and artifice only with respect to Counts 7-10 (the "Ink Recycling Scheme").  [Doc. 81, p. 2]  The Government explains that Count 11 concerns only the Ink Recycling Scheme, and does not charge Brandi with conspiracy to commit Counts 1-6 (the "Online Adjustment Scheme").  This clarification undermines Brandi's arguments for severance of Counts 7-10 from Count 11.

Brandi's claim that evidence does not overlap appears to be based on the mistaken belief that Count 11 charges conspiracy to commit Counts 1-6.  Brandi's motion provides only a conclusory assertion that the evidence on the substantive Counts 7-10 does not overlap with the evidence on Count 11, conspiracy to commit Counts 7-10.  The Court need not consider issues referred to in a perfunctory manner without "some effort at developed argumentation."  *United States v. De Vaughn*, 694 F.3d 1141, 1155 n.9 (10th Cir. 2012) (internal quotation marks omitted).  The Government responds that the evidence supporting Counts 7-10 and Count 11 is "nearly identical," and severance "would be useless to Defendant and would be a waste of resources."  [Doc. 81, p. 1]  As the Government argues, logically the same evidence that Brandi and Matthew aided and abetted each other in the Ink Recycling Scheme supports the conspiracy

count.  It is likely that the same evidence would be admissible in each trial, even if Counts 7-10 were tried separately from Count 11.  *See Valentine*, 706 F.2d at 290 (suggesting court may consider cross-admissibility of evidence).  *But see United States v. Jones*, 213 F.3d 1253, 1260 (10th Cir. 2000) (emphasizing that discussion of cross-admissibility in *Valentine* was dictum). In addition, severance is not required because the substantive and conspiracy counts are related as a result of Brandi's own conduct.  *See id.*  Brandi filed no reply disputing the Government's assertions that the evidence is "nearly identical."  The Court concludes that Counts 7-10 and Count 11 are "inextricably intertwined," and that considerations of judicial economy and conservation of resources outweigh Brandi's unsupported assertions.  *See Burkley*, 513 F.3d at 1188.

Brandi makes two claims of prejudice:  (1)  There may be spillover prejudice; and (2) She may wish to testify on some counts but not others.  [Doc. 54, pp. 3-4]

First, Brandi claims there may be spillover prejudice.  She argues:  (a) "The evidence that Ms. Channon conspired with Mr. Channon on Counts 1-6 is prejudicial and would likely be used by the jury to convict her on the other charges in Counts 7-10"; and (b)  "Proof that Ms. Channon is guilty of the ink recycling allegations in Counts 7-10 and that part of Count 11 may be used to convict her of the other part of Count 11 which pertains to Counts 1-6."  [Doc. 54, pp. 3-4] These arguments are based on the mistaken belief that Count 11 alleges conspiracy to commit Counts 1-6.  Brandi also argues that joinder of Counts 1-6, charged only against Matthew, with Counts 7-10 will prejudice and confuse the jury, rendering Brandi's trial unfair.  [Doc. 54, pp. 4-5, ¶ 12]  Brandi's claims of spillover prejudice are not sufficient to justify severance.  *See Jones*, 530 F.3d at 1303.  "As a general rule, neither a mere allegation that defendant would have a better chance of acquittal in a separate trial nor an argument that evidence against one defendant

would have a 'spillover effect' on another defendant demonstrates prejudice." *Id.* (internal quotation marks omitted); *see United States v. Clark*, 717 F.3d 790, 818 (10th Cir. 2013).  Any potential confusion would be addressed through jury instructions and potentially through limiting instructions; the "general rule" is that the court presumes that the jury conscientiously follows all instructions and compartmentalizes the evidence applicable against each defendant.  *United States v. Brooks*, 736 F.3d 921, 941 (10th Cir. 2013); *United States v. Pinto*, 838 F.2d 426, 434 (10th Cir. 1988).  Brandi's assertions on this point do not support severance.

Second, Brandi claims that she "may wish to testify as to Counts 7-10 as it pertains to Count 11 but not as to the Counts 1-6 as it pertains to Count 11, which also may confound her in presenting separate defenses to Count 11."  [Doc. 54, p. 4, ¶ 10]  As the Court understands this argument, it appears to again be based on the misunderstanding that Count 11 charges conspiracy to commit Counts 1-6.  At any event, a defendant "cannot require a severance by simply informing the court that he intends to testify as to some counts but not as to others." *United States v. Hollis*, 971 F.2d 1441, 1457 (10th Cir. 1992).  "If a defendant's desire not to testify on a particular count, without more, amounted to a compelling need not to testify, then required severance would be the rule, and not the exception."  *Jones*, 530 F.3d at 1301.  Instead, the defendant must make "a convincing showing" that she has "both important testimony to give concerning one count *and* a strong need to refrain from testifying on the other."  *Id.* at 1300 (internal quotation marks omitted); *see Valentine*, 706 F.2d at 291.  To demonstrate "convincing need, the defendant must present enough information … to satisfy the court that the claim of prejudice is genuine and to enable it to intelligently weigh the considerations of economy and expedition in judicial administration against the defendant's interest in having a free choice with respect to testifying."  *Jones*, 530 F.3d at 1300 (internal quotation marks omitted); *see Valentine*,

706 F.2d at 291.  A defendant must "'show the specific testimony he will present about one offense, and his specific reasons for not testifying about others, to justify severance.'"  *United States v. Hernandez*, 829 F.2d 988, 991 (10th Cir. 1987) (quoting *United States v. Bronco*, 597 F.2d 1300, 1303 (9th Cir. 1979)).  Brandi fails to make any of the required showings, thus failing to justify severance on this basis.

Brandi makes only speculative and conclusory allegations of prejudice, some of which are based on misinterpretation of Count 11.  On the other hand, separate trials on these related counts would cause additional delay in bringing these defendants to trial, cause inconvenience to witnesses, and consume additional public resources.  On balance, the Court concludes that severance of Counts 7-10 from Count 11 is not justified.  *See Johnson*, 130 F.3d at 1427.

Brandi requests an evidentiary hearing.  The Court concludes that no hearing is necessary because Brandi fails to "raise factual allegations that are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact are in issue." *Barajas-Chavez*, 358 F.3d at 1266 (internal quotation marks omitted))  Brandi does not allege evidence or prejudice justifying relief, and she has had a full and fair opportunity to present relevant facts and arguments and to rebut the Government's submission.  *See Ary*, 518 F.3d at 782.  Speculation, unsupported by evidence, is insufficient to require an evidentiary hearing.  *Id*. at 785.

The Court will deny Brandi's motion to sever.

## V.  Defendants' Motion To Dismiss for Selective Prosecution [Doc. 51]

The Court next considers *Defendants' Motion To Dismiss for Selective Prosecution and Supporting Authorities*.  [Doc. 51]  The Government filed a response [Doc. 61], and Defendants

filed a reply [Doc. 73].   Having reviewed the motion, briefs, and relevant law, the Court concludes that the motion should be denied.

While investigating Defendants, evidence was discovered that Moran and Gonzales were involved in activity similar to Defendants' Ink Recycling Scheme.   A search warrant was executed on Moran and Gonzales's residence.   Defendants state that Moran and Gonzales were engaged in the same activity yet were not prosecuted.   On this basis, Defendants claim that they were singled out for prosecution while the Government ignored crimes of equal or greater severity, and that this prosecutorial decision was arbitrary and discriminatory in violation of the Equal Protection Clause.

A "decision to prosecute that is 'deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification' is a denial of equal protection."   *United States v. Deberry*, 430 F.3d 1294, 1299 (10th Cir. 2005) (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962)).   The defendant "must show 'that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose.'"   *United States v. DeChristopher*, 695 F.3d 1082, 1097 (10th Cir. 2012) (quoting *United States v. Armstrong*, 517 U.S. 456, 465 (1996)).

Defendants recognize that "'mere failure to prosecute other offenders is no basis for a finding of denial of equal protection.'"   [Doc. 51, p. 6 (quoting *United States v. Blitstein*, 626 F.2d 774, 782 (10th Cir. 1980))]   Defendants do not claim that the decision to prosecute them was due to their membership in any protected class or racial or gender group.   [Doc. 61, p. 3] Instead, Defendants claim that the Government "purposely and deliberately singled [them out] for prosecution while the United States has ignored crimes of equal or greater severity" and that selecting Defendants for prosecution was "arbitrary and discriminatory."   [Doc. 51, pp. 4-5]

Equal protection jurisprudence is typically concerned with governmental classifications that affect some groups differently than others.  *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008); *see Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215-16 (10th Cir. 2011).  In *Olech*, the Supreme Court recognized that it is also possible to bring an equal protection claim on the "class-of-one" theory—in which a person claims that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam).

Defendants merely insist that they were singled out for prosecution, arbitrarily and discriminatorily.  They fail to develop an argument based on the class-of-one theory of equal protection, and fail to cite authority specific to this theory.  The Court could deny Defendants' motion on this basis alone.  *See United States v. De Vaughn*, 694 F.3d 1141, 1155 n. 9 (10th Cir. 2012) ("The court will not consider issue[s] adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation."); *French v. Colorado*,  357 Fed. Appx. 200, 203 (10th Cir. 2009) (unpublished) (declining to address issues on which pro se plaintiff cites no authorities and fails to develop any coherent legal argument).

But the Court concludes that Defendants fail to make allegations that would support a class-of-one theory, at any event.  For this additional reason, the Court will deny Defendants' motion.

## A.  Class-of-One Theory

In *Engquist*, the Court restricted the class-of-one theory, explaining that *Olech* and cases upon which that case relied involved property assessment and taxation schemes—situations in which legislative or regulatory provisions set a clear standard.  *Engquist*, 553 U.S. at 602.  The Court distinguished other forms of state action "which by their nature involve discretionary

decisionmaking based on a vast array of subjective, individualized assessments." *Id*. at 603.  "In such cases the rule that people should be 'treated alike, under like circumstances and conditions' is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted." *Id*.  In the latter situation, "allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise." *Id*.

Thus the Supreme Court held that the class-of-one theory of equal protection does not apply in the public employment context.  *Id*. at 598, 609.  *Engquist*'s reasoning rested on the "crucial difference" between the government exercising regulatory power and the government acting as proprietor; in the latter situation, the government enjoys "significantly greater leeway" and wider latitude.  *Id*. at 599-600.  Treating employees differently does not constitute classification that raises equal protection concerns, but instead is merely the consequence of the broad discretion allowed an employer.  *Id*. at 605.  When the government enjoys broad discretion—as in the employment context—a class-of-one challenge may be impermissible.  *Id*. at 604-05.  The Court's decision was based in part on practical considerations; the Court observed that a different holding would allow a federal constitutional claim for every employment decision, thus paralyzing government offices.  *Id*. at 607-08.  Governments would be forced to defend "a multitude of such claims," and courts would "be obliged to sort through them for the proverbial needle in a haystack."  *Id*. at 608.  The Court stated that the Equal Protection Clause does not require this "'displacement of managerial discretion by judicial supervision.'"  *Id*. (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 423 (2006)).  The Court concluded that a federal court "'is not the appropriate forum in which to review the multitude of

personnel decisions that are made daily by public agencies.'"  *Id*. at 609 (quoting *Bishop v. Wood*, 426 U.S. 341, 349 (1976)).

Defendants correctly acknowledge that the prosecutor has "broad discretion" in enforcing the criminal laws, and that as long as there is probable cause to believe a person has committed an offense the decision whether to prosecute generally rests in the prosecutor's discretion.  [Doc. 51, p. 5]  *See Wayte v. United States*, 470 U.S. 598, 607 (1985).  The question is whether, given this broad discretion, the reasoning of *Engquist* leads to the conclusion that the class-of-one theory is inapplicable in the selective prosecution context, as in the public employment context; both contexts involve "discretionary decisionmaking based on a vast array of subjective, individualized assessments."  *Engquist*, 553 U.S. at 603.

In *Kansas Penn Gaming*, the Tenth Circuit emphasized that it had "approached class-of-one claims with caution, wary of 'turning even quotidian exercises of government discretion into constitutional causes.'"  *Kan. Penn Gaming*, 656 F.3d at 1216 (quoting *Jicarilla Apache Nation v. Rio Arriba County*, 440 F.3d 1202, 1209 (10th Cir. 2006)).  The Court recognized that this theory could provide a federal cause of action for almost every executive and administrative decision made by state actors, turning the federal courts into "'general-purpose second-guessers of the reasonableness of broad areas of state and local decisionmaking:  a role that is both ill-suited to the federal courts and offensive to state and local autonomy in our federal system.'"  *Id*. (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210-11 (10th Cir. 2004)).  The Court recognized that these concerns "are magnified with challenges to low-level government decision-making which often involves a great deal of discretion," because the "latitude afforded police officers, IRS agents, university administrators, zoning officials, and other, similar government actors necessarily results in a sizeable amount of random variation in outcome."  *Id*.

As the Tenth Circuit observed, it was significant to the *Engquist* Court that in *Olech* and the cases on which it relied there was "a clear and easily administrable standard:  the government was not 'exercising discretionary authority.'"  *Kan. Penn Gaming*, 656 F.3d at 1217 (quoting *Engquist*, 553 U.S. at 602).  The Tenth Circuit observed that several circuits had read *Engquist* to apply outside employment cases, in other contexts involving discretionary decisions.  *Id.* at 1217 n.1.  The Tenth Circuit noted a Seventh Circuit decision holding that a class-of-one equal protection challenge based on arbitrariness is inapplicable to the exercise of prosecutorial discretion.  *Id.* at 1217 n.1 (citing *United States v. Moore*, 543 F.3d 891, 901 (7th Cir. 2008)).  The Seventh Circuit stated that "the discretion conferred on prosecutors in choosing whom and how to prosecute is flatly inconsistent with a presumption of uniform treatment," and "treat[ing] like individuals differently in this context, even without a strictly rational justification, 'is not to classify them in a way that raises equal protection concerns.'"  *Moore*, 543 F.3d at 901 (quoting *Engquist*, 553 U.S. at 605).  Concluding that the claim in *Kansas Penn Gaming* failed under existing caselaw, the Tenth Circuit did not need to reach the issue of whether a class-of-one theory is unavailable to challenge any discretionary decision.  *Kan. Penn Gaming*, 656 F.3d at 1217 n.1.

As in *Kansas Penn Gaming*, Defendants' claim fails under existing caselaw.

**B.  Standard for Selective Prosecution**

The standard for proving selective prosecution is "'demanding.'"  *Deberry*, 430 F.3d at 1299 (quoting *Armstrong*, 517 U.S. at 463).  "Caution is required when evaluating selective-prosecution claims" because the defendant "is asking the judiciary to exercise power over a 'special province' of the executive branch, a province in which, for good reason, the executive possesses broad discretion."  *Id.* at 1299; *see Armstrong*, 517 U.S. at 464.  Provided there is

probable cause to believe a person committed an offense, the decision to prosecute "generally rests entirely in [the prosecutor's] discretion." *Armstrong*, 517 U.S. at 464 (internal quotation marks omitted). Thus courts are "'properly hesitant to examine the decision whether to prosecute.'" *Id.* (quoting *Wayte*, 470 U.S. at 608). "'Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy.'" *Id.* (quoting *Wayte*, 470 U.S. at 607).

"The decision to prosecute 'is particularly ill-suited to judicial review.'" *Deberry*, 430 F.3d at 1299 (quoting *Wayte*, 470 U.S. at 607); *see Armstrong*, 517 U.S. at 465. For these reasons, courts apply a presumption of regularity to prosecutorial decisions, absent clear evidence to the contrary. *Id.*

### (1) Discriminatory effect

To establish a discriminatory effect in a selective prosecution case, the defendant must show that similarly situated individuals were not prosecuted. *Id.* The Tenth Circuit imposes an "'exacting burden[ ]'" to demonstrate similarity in class-of-one cases. *Shifrin v. Toll*, 483 Fed. Appx. 446, 449 (10th Cir. 2012) (unpublished) (quoting *Jicarilla Apache Nation v. Rio Arriba Cnty.*, 440 F.3d 1202, 1213 (10th Cir. 2006)); *see Armstrong*, 517 U.S. at 463. Conclusory allegations are not sufficient. *Shifrin*, 483 Fed. Appx. at 450. Instead, the claimant "must show the other [persons'] circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." *DeChristopher*, 695 F.3d at 1097 (internal quotation marks omitted). The claimant must establish that others, "'similarly situated in every material respect'" were treated differently, and that the difference in treatment was "without rational basis, that is, the government action was 'irrational and abusive,'"

and "'wholly unrelated to any legitimate state activity.'"  *Kan. Penn Gaming*, 656 F.3d at 1216

(quoting *Jicarilla Apache Nation*, 440 F.3d at 1210, and *Mimics, Inc. v. Vill. of Angel Fire*, 394

F.3d 836, 849 (10th Cir. 2005)).  This is an objective standard; the court does not inquire into the

government actor's actual motivations if there is a reasonable justification for the challenged

action.  *Id.*

In *Kansas Penn Gaming*, the plaintiff's cursory allegations that other property owners

were similarly situated because other properties had "comparable" or "similar" conditions was

insufficient; instead, specific facts plausibly suggesting similarity in all material respects was

required—particularly when the claim involved "the inherently subjective and individualized

enforcement of health and safety regulations," implicating a "multiplicity of relevant

(nondiscriminatory) variables," from "the relative culpability of the defendants to the optimal

deployment of prosecutorial resources," making it "correspondingly more difficult to bring an

equal protection claim."  *Id.* at 1220.

In a class-of-one case, "'it is exceedingly difficult to demonstrate that any difference in

treatment is not attributable to a quirk of the plaintiff or even to the fallibility of administrators

whose inconsistency is as random as it is inevitable.'"  *Shifrin*, 483 Fed. Appx. at 449 (quoting

*Jicarilla Apache Nation*, 440 F.3d at 1213).  When there are few variables and the set of

potentially similarly situated persons is well defined, it is easier to satisfy this burden.  *Jennings

v. City of Stillwater*, 383 F.3d 1199, 1214 (10th Cir. 2004).  But when the government actor has a

broad range of discretion, "and may properly base a decision on a myriad of potentially relevant

variables, it is more likely that there are 'material distinctions between allegedly similarly

situated parties,'" and thus a rational and not wholly arbitrary reason for different treatment.

*Kan. Penn Gaming*, 656 F.3d at 1218 (quoting *Jicarilla Apache Nation*, 440 F.3d at 1213).  The

claimant then "must account for a wide range of characteristics in identifying similarly situated individuals." *Id*. (noting that "threadbare allegation" of different treatment is insufficient).

A selective prosecution case involves both broad discretion and multiple variables.  A difference in treatment can be the result of a number of considerations, many of them legitimate. *Jennings*, 383 F.3d at 1214.  Prosecutorial decisions involve assessment of "'[s]uch factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan,'" considerations which "'are not readily susceptible to the kind of analysis the courts are competent to undertake.'"  *Id*. at 1214 (quoting *Armstrong*, 517 U.S. at 465).  A claimant failing to allege that others not prosecuted were similarly situated, even after such factors are considered, fails to carry the "exacting burden" imposed.  *Id*. at 1215.

The Government's response states that comparatively little of evidentiary value was found pursuant to the search warrant executed on Moran and Gonzales's residence.  [Doc. 61, p. 1]  The response also asserts that Defendants are being prosecuted "because they are the most culpable offenders of which the investigators are aware, because the case against them is the strongest, and because prosecutorial resources are limited."  [Doc. 61]  Defendants' allegations that Moran and Gonzales are similarly situated fails to consider such factors as relative culpability, the relative strengths of the cases, and deterrence value.

The Court observes that Defendants' motion includes a misleading quotation, in what may be an attempt to show that Moran and Gonzales are more, or at least equally, culpable. Defendants' motion asserts:

> B.  That <u>Moran and Gonzales</u> had gone on a trip with the Channons to Arizona <u>"to show them how to perpetrate the OfficeMax scheme"</u> and, according to MS. CHANNON on June 28, 2011, Moran and Gonzales were headed to California on June 29, 2011 "to carry out the scheme".  (Affidavit at 6)

[Doc. 51, pp. 2-3 (emphasis added)]   The subject of the main clause is also the subject of the infinitive; this assertion clearly conveys that Moran and Gonzales were going to show Defendants how to perpetrate the scheme.   On the contrary, the full sentence from which the emphasized language is quoted states the opposite; the affidavit alleges that it was Defendants who were going to show Moran and Gonzales how to carry out the scheme.   The affidavit from which Defendants quote is the affidavit for the search warrant for Moran and Gonzales's residence—not the affidavit in Defendants' case.   The Government's response attaches a copy of the Moran/Gonzales affidavit and advises the Court of the, at best, inaccuracy of Defendants' motion.   [Doc. 61, p. 2 n.1; Doc. 61-1 (affidavit for search warrant, p. 6)]   Defendants' reply attempts to explain that its writing was merely "inartful."   [Doc. 73, p. 2]   But neither the Government nor the Court should be required to obtain and study an affidavit from a different case in order to determine whether Defendants' partial quotation is a misrepresentation.   The Court cautions Defendants' counsel to be more careful and accurate in future.

The Court cannot conclude that Defendants' allegations are sufficient to show a discriminatory effect.   Defendants fail to allege that Moran and Gonzales are similarly situated in all material respects.   *See Felts v. City of Dodge City*, 499 Fed. Appx 750, 752 (10th Cir. 2012) (unpublished) ("It is crucial that the claimant carry his 'substantial burden' of demonstrating that there are others 'similarly situated in all material respects' who have been treated differently." (quoting *Kan. Penn Gaming*, 656 F.3d at 1217)).

### (2)  Discriminatory purpose

The Court rests its decision, however, on Defendants' failure to assert that the Government's decision to prosecute Defendants was "'motivated by a discriminatory purpose.'" *Armstrong*, 517 U.S. at 465 (quoting *Wayte*, 470 U.S. at 608); *see Olech*, 528 U.S. at 563 (stating

that class-of-one claimant must allege she has been "intentionally treated differently"). Defendants' conclusory allegation that the Government "purposely and deliberately singled [them out] for prosecution" is not sufficient.  [Doc. 51, p. 4]  *See Bartell v. Aurora Pub. Schs.*, 263 F.3d 1143, 1149 (10th Cir. 2001), *overruled on other grounds by Pignanelli v. Pueblo Sch. Dist.*, 540 F.3d 1213, 1222 (10th Cir. 2008); *Shifrin*, 483 Fed. Appx. at 450.  In *SECYS*, the Tenth Circuit clarified  the claimant's burden on this point.  *SECSYS, LLC v. Vigil*, 666 F.3d 678 (10th Cir. 2012).  Although no proof of an exploitative or vicious motive is required, the claimant is required to show that the governmental action intentionally discriminates between persons.  *Id*. at 689.  The Tenth Circuit discussed an example from *Engquist* to explain what is required.

*Engquist* used as an illustration a police officer who gives a speeding ticket to only one motorist on a busy highway where many people are speeding.  *Engquist*, 553 U.S. at 603.  The ticketed motorist may be able to state an equal protection claim for discrimination on the basis of race or sex, because those classifications implicate basic equal protection concerns.  *Id*. at 604. But the ticketed motorist cannot be allowed to make a class-of-one challenge, even if he was ticketed for no discernible or articulable reason; to allow such a challenge would be incompatible with the discretion allowed the officer, because not all speeders can be stopped and ticketed.  *Id*. "It is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective and individualized."  *Id*.

The Tenth Circuit explained that this officer selects speeders at random because he cannot ticket everybody, but the officer "doesn't possess an *intent* to single out any particular person *because of who* he or she is."  *SECSYS*, 666 F.3d at 690.  The officer acts "with volition," and "knows that the effect of his actions will be differential treatment for different speeding

drivers."  *Id*.  But the equal protection doctrine requires more; it requires "a particular intent, an *intent* to discriminate, in this example an intent to pull over a particular individual *because of* his or her identity."  *Id*.  In this example, no such intent exists and therefore no equal protection violation occurs.  *Id*.

As in *SECYS*, Defendants fail to allege an intent to discriminate.  They merely allege that two others were not prosecuted.  Even if Defendants had sufficiently alleged that Moran and Gonzales were similarly situated in every material detail (which is doubtful), Defendants failed to allege a critical element:  intent to discriminate.  Defendants are like the one speeder who was pulled over, because the Government cannot prosecute every offender.  In evaluating cases and deciding which to charge, however, the prosecutor undoubtedly exercises significantly broader discretion than the patrol officer ticketing speeders; this difference reinforces the conclusion that Defendants' equal protection claim is deficient.

### C.  Conclusion on Selective Prosecution

Defendants request an evidentiary hearing.  [Doc. 51, p. 8]  Defendants have had a full and fair opportunity to present relevant facts and arguments and to rebut the Government's submissions.  *See Ary*, 518 F.3d at 782.  The Court concludes that Defendants fail to even raise "factual allegations that are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact are in issue."  *Barajas-Chavez*, 358 F.3d at 1266 (internal quotation marks omitted)).  An evidentiary hearing is not warranted.

The Court concludes that Defendants fail to make allegations that would support a selective prosecution claim.  The Court will deny the motion to dismiss.

**VI.  Defendants' Motion To Dismiss for Lack of Admissible Evidence [Doc. 56]**

The Court next considers *Defendants' Joint Motion To Dismiss* [Doc. 56].  The Government filed a response [Doc. 62], and Defendants filed a reply [Docs. 76, 78 (supplement to reply)].  Having reviewed the motions, briefs, and relevant law, the Court concludes that the motion should be denied.

Defendants move to dismiss "because the government does not have admissible evidence to support a conviction on any counts alleged in the indictment."  [Doc. 56, p. 1]  Defendants' motion describes various items of evidence that Defendants assert the Government will have to present at trial to obtain a conviction.  Defendants assert:  "To date, the United States has not provided the defense with any actual evidence …."  [Doc. 56, p. 8]

Defendants' motion attributes to the Government statements that it lacks evidence of the transactions and wire transmissions, and that Defendants bear the burden of collecting evidence. [Doc. 56, p. 12]  The Government responds both are misstatements.  [Doc. 62, p. 2]

The Government argues that Defendants' motion "fails to cite any Rule of Criminal Procedure as a basis for its requested relief because there is no procedural vehicle for a court to dismiss an indictment before trial because of alleged lack of evidentiary support."  [Doc. 62, p. 1]  The Government contends that Defendants improperly request the Court to "play the role of trial jury in a pretrial motion to dismiss."  [Doc. 62, p. 1]

The parties agree that Defendants' motion does not challenge the sufficiency of the Indictment.  [Doc. 62, p. 3; Doc. 76, p. 2]  Instead, Defendants state that "in order to conserve judicial resources and the public costs of appointed counsel and a jury trial, the Court should dismiss this case because the government has no admissible evidence of the transactions

underlying the alleged scheme or artifice to defraud." [Doc. 76, p. 2] Defendants "do not assert

factual innocence as a basis for their motion to dismiss." [Doc. 76, p. 3]

The crux of Defendants' motion is the assertion that the Government does not have

"sufficient evidence to prove 'beyond a reasonable doubt every fact necessary to constitute the

crime with which [they are] charged.'" [Doc. 56, p. 15 (quoting *In re Winship*, 397 U.S. 358, 364

(1970), and citing *Patton v. Mullin*, 425 F.3d 788, 803-04 (10th Cir. 2005))] This motion asks

the Court to assess, pretrial, the sufficiency of the Government's evidence. Such an assessment

is not allowed by the rules of criminal procedure or by the Court's role in this case.

Judicial authority to rule on pretrial motions is outlined in Federal Rule of Criminal

Procedure 12. Rule 12(b)(2) provides:

> (2) Motions That May Be Made Before Trial. A party may raise by pretrial
> motion any defense, objection, or request that the court can determine <u>without a
> trial of the general issue.</u>

(Emphasis added.) The emphasized language precludes Defendants' motion. The matter raised

by Defendants cannot be determined "without a trial of the general issue."[4] It is the general

issue. *See United States v. King*, 581 F.2d 800, 802 (10th Cir. 1978). The "general issue" is

"defined as evidence relevant to the question of guilt or innocence." *United States v. Pope*, 613

F.3d 1255, 1259 (10th Cir. 2010) (internal quotation marks omitted). Rule 12 permits pretrial

resolution only "when 'trial of the facts surrounding the commission of the alleged offense would

be of no assistance.'" *Id.* (quoting *United States v. Covington*, 395 U.S. 57, 60 (1969)). If

contested facts "would be of *any* assistance in determining the validity of the motion, Rule 12

doesn't authorize its disposition before trial." *Id.* (holding that affirmative defense did bear

---

[4] The Court notes that effective December 1, 2014, Rule 12(b)(1) will be amended to read that a party can raise by pretrial motion a matter "that the court can determine without a trial on the merits." This amendment substitutes the "more modern phrase 'trial on the merits'" for the "more archaic phrase 'trial of the general issue'"; no change in meaning is intended. Rule 12(b) advisory committee's note to 2014 amendment. The new language of course would lead the Court to the same conclusion.

directly on guilt or innocence and did require trial of general issue, thus could not be decided pretrial); *see United States v. Hutchinson*, 438 Fed. Appx. 681, 686 n.3 (10th Cir. 2011) (unpublished) (recognizing that motion to dismiss indictment should be denied if a fact question remains for trial).

Rule 12(b)(2) does not allow the Court to decide the issue raised by Defendants. *See King*, 581 F.2d at 802 (reversing district court's pretrial dismissal on basis of determination that defendants' conduct did not constitute violation of the statute charged). "Challenging an indictment is not a means of testing the strength or weakness of the government's case, or the sufficiency of the government's evidence." *United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir. 2006). An indictment must be tested solely on the basis of the allegations made, and those allegations must be taken as true. *Id.* A district court cannot dismiss an indictment based on the court's determination that there is insufficient factual support. *Id.*; *see King*, 581 F.2d at 802. Instead, "the question is not whether the government has presented sufficient evidence to support the charge, but solely whether the allegations in the indictment, if true, are sufficient to establish a violation of the charged offense." *Todd*, 446 F.3d at 1068 (reversing dismissal of felon-in-possession charge and holding that sufficiency of uncorroborated admission could not be determined pretrial).

In this case, Defendants explicitly state that they are not challenging the sufficiency of the Indictment. [Doc. 76, p. 2] Although Defendants attempt to rely on Rule 12(b)(2) in their reply, they fail to understand the limitation imposed by the language restricting pretrial motions to those that can be decided "without a trial of the general issue." [Doc. 76, p. 2] The cases cited by Defendants, *Winship* and *Patton*, provide no support for Defendants' pretrial motion. These cases concern the sufficiency of evidence and standard of proof required for adjudication

of delinquency (*Winship*) or conviction at trial (*Patton*).  In each case, the challenge was made after adjudication or conviction—not pretrial.

Although there are rare situations in which dismissal of charges pretrial is allowed based on assessment of evidence, Defendants' is not such a case.  *See Todd*, 446 F.3d at 1068.  If the operative facts are undisputed, and if the government fails to object to the court's consideration of evidence beyond the four corners of the indictment, a district court may dismiss a case pretrial upon the court's determination that the undisputed facts show that the government is incapable of proving its case beyond a reasonable doubt.  *United States v. Hall*, 20 F.3d 1084, 1087-88 (10th Cir. 1994).  Such a dismissal is not on the basis of a lack of evidence to support the government's case, but because undisputed evidence shows as a matter of law that the defendant could not have committed the offense charged.  *Todd*, 446 F.3d at 1068.

In Defendants' case, neither of the two critical prerequisites is present; the operative facts are disputed, and the Government objects to the Court considering evidence outside the Indictment.  [Doc. 62, pp. 3-4]  Defendants have attached many pages of exhibits to their motion, in an attempt to have the Court assess whether these exhibits provide sufficient evidence to support the offenses charged.  [Docs. 56-1 to 56-9]  Since the *Hall* exception is inapplicable, the Court is precluded from assessing the sufficiency of evidence; the Court does not consider Defendant's exhibits.  *See Todd*, 446 F.3d at 1067 ("Courts should therefore avoid considering evidence outside the indictment when testing the indictment's legal sufficiency.").

Defendants essentially ask the Court to grant a "pretrial judgment of acquittal."  *Cf.* Rule 29 (allowing judgment of acquittal for insufficient evidence, at earliest, after government closes evidence or at close of all evidence).  There is no "pretrial judgment of acquittal" available.  Nor

is there an equivalent in criminal cases to summary judgment in civil cases.  *Pope*, 613 F.3d at 1259, 1261 (stating that Rule 12 "is not a parallel to civil summary judgment procedures").

As the Government argues, whether the Government's evidence would support conviction is a matter for the trier of fact.  Defendants have not waived a jury trial.  It will be the province of the jury to determine whether the evidence supports conviction beyond a reasonable doubt.  *See King*, 581 F.2d at 802.  For this Court to do so, pretrial, would cause this Court to usurp the role of the jury in determining the "general issue" of Defendants' guilt or innocence.  *See Pope*, 613 F.3d at 1259.

The Court notes that Defendants refer to some discovery issues in support of their motion to dismiss.  Discovery issues are the subject of *Defendants' Joint Motion To Compel Discovery.* [Doc. 57]  The Court presumes that Defendants have raised all of their discovery issues under that motion, and that they will be resolved under that motion.  The Court notes that Defendants claim they were provided only with summaries of evidence; the Government responds that it has provided discovery asserted to be missing, and also that some items constitute evidence instead of summaries.   [Doc. 56, pp. 3-5, 13-14-15; Doc. 62, p. 2 n.1]   These issues are more appropriately addressed under the motion to compel discovery.  The Court will not attempt to address Defendants' general and somewhat unfocused assertions about discovery under a motion to dismiss for lack of admissible evidence; similarly, the Court will not here address Defendants' general assertions that summaries will not be admissible at trial.   At any event, even if the Government agreed that it has only summaries of some transactions, Defendants' motion to dismiss for lack of admissible evidence is not viable and would still be denied, as discussed above.  *See Todd*, 446 F.3d at 1068.

Defendants' motion also cites *Brady* and *Giglio*, asserting that the defense has requested "admissible, and possibly exculpatory evidence from the government, and the government is unable to produce them to the defense."   [Doc. 56, pp. 15-16]  Defendants assert:  "Further disclosures could contain additional information that exculpates Mr. and Mrs. Channon."  [Doc. 56, p. 16]  These vague and speculative assertions are insufficient to require disclosure.  *See United States v. Caro*, 597 F.3d 608, 619 (4th Cir. 2010).  And, to the extent that Defendants intend to request further discovery, the Court again presumes that Defendants have raised all of their discovery issues under *Defendants' Joint Motion To Compel Discovery* [Doc. 57].

## VII.  Defendants' Motion To Sever Defendants' Trials [Doc. 55]

The Court next considers *Defendants' Motion To Sever Defendants and Supporting Authorities*.  [Doc. 55]  The Government filed a response, attaching copies of Brandi's and Matthew's statements.  [Docs. 74, 74-1, 74-2].  Defendants filed a reply.  [Doc. 87]  In order to be fully informed, the Court ordered the Government to file a copy of Brandi's statement redacted as proposed by the Government.  *See* Fed. R. Crim. P. 14(b).  The Government filed *United States' Notice of Bruton-Redacted Statement* [Doc. 126] on July 24, 2014.  The Court allowed, but did not require, an additional brief from each Defendant, to be filed by August 8, 2014; neither Defendant filed an additional brief.

Having reviewed the motions, briefs, and relevant law, the Court concludes that the motion to sever Defendants' trials should be denied.

Two or more defendants may be joined in the same indictment "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."  Fed. R. Crim. P. 8(b).  "All defendants need not be charged

in each count."  *Id*.  "Rule 8(b) embodies a preference in the federal system for joint trials of defendants who are indicted together, and it is broadly construed so as to enhance the efficiency of the judicial system."  *United States v. Clark*, 717 F.3d 790, 817 (10th Cir. 2013) (internal quotation marks and citations omitted), *cert. denied*, ___ U.S. ___, 134 S. Ct. 903, 187 L. Ed. 2d 777 (2014).

Defendants do not appear to dispute that they were properly joined under Rule 8.  At any event, the Court concludes that joinder was proper because the Indictment alleges that Defendants participated in a number of the same acts or transactions, and in the same series of acts or transactions, constituting wire fraud offenses.

Federal Rule of Criminal Procedure 14(a) provides that a court may sever the defendants' trials if joinder "appears to prejudice a defendant or the government."  Prejudice under Rule 14 means actual prejudice—"which is not satisfied merely by pointing to a 'negative spill-over effect from damaging evidence presented against codefendants.'"  *United States v. Caldwell*, 560 F.3d 1214, 1221 (10th Cir. 2009) (quoting *United States v. Wacker*, 72 F.3d 1453, 1468 (10th Cir. 1995)).  Instead, "'a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'"  *Clark*, 717 F.3d at 818 (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)); *see Johnson*, 130 F.3d at 1427 (stating that prejudicial joinder occurs when a defendant's right to a fair trial is threatened).  "As a general rule, neither 'a mere allegation that defendant would have a better chance of acquittal in a separate trial' nor an argument that evidence against one defendant would have a 'spillover effect' on another defendant demonstrates prejudice."  *Jones*, 530 F.3d at 1303 (quoting *United States v. Small*, 423 F.3d 1164, 1182 (10th Cir. 2005)).  The defendant seeking to show abuse of

discretion for denial of severance faces "a steep challenge," bearing "the 'heavy burden of showing real prejudice.'"   *United States v. Pursley*, 577 F.3d 1204, 1215 (10th Cir. 2009) (quoting *United States v. McConnell*, 749 F.2d 1441, 1444 (10th Cir. 1984)).

There is "'a preference in the federal system for joint trials of defendants who are indicted together.'"   *Pursley*, 577 F.3d at 1215 (quoting *Zafiro*, 506 U.S. at 537).   And there is a presumption that co-conspirators be tried together.   *Id*.

Joint trials "conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial."   *Jones*, 530 F.3d at 1298 (internal quotation marks omitted).   Joint trials "promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts."   *Zafiro*, 506 U.S. at 537 (internal quotation marks omitted).   The Supreme Court recognized the costs resulting from severance:

> It would impair both the efficiency and the fairness of the criminal justice system to require, in all these cases of joint crimes where incriminating statements exist, that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand.

*Richardson v. Marsh*, 481 U.S. 200, 210 (1987).

In deciding a motion to sever, a court must weigh any potential prejudice "'against the obviously important considerations of economy and expedition in judicial administration.'"   *United States v. Burkley*, 513 F.3d 1183, 1188 (10th Cir. 2008) (quoting *United States v. Dirden*, 38 F.3d 1131, 1140 (10th Cir. 1994)).

Defendants suggest numerous problems in a joint trial.   Most of their arguments, however, are conclusory and unfocused.

## A. *Bruton*

Defendants each made a statement to investigators.  They assert that introduction of these statements at a joint trial would violate *Bruton v. United States*, 391 U.S. 123 (1968).  [Doc. 55, pp. 4-5]

The Government's redacted version of Brandi's statement omits any references to Matthew and uses the singular pronouns "she" and "her" in place of "they" and "them."  [Doc. 126-1]  The Government advises that Brandi's statement would be introduced at trial through testimony by Special Agent Boady, in accordance with this redacted version.  [Doc. 126, p. 1]  So presented, the testimony would not show that Matthew, or any other person, was even involved—except for the references to Moran and Gonzales.  [Doc. 74, p. 5; Doc. 126-1]

The right of confrontation guarantees the right of a defendant to cross-examine witnesses against him.  *Richardson*, 481 U.S. at 206.  *Bruton* held that when two defendants are tried jointly, the pretrial statement of one defendant cannot be admitted against the other unless the confessing defendant takes the stand.  *Bruton*, 391 U.S. at 135-36.  The Supreme Court later distinguished *Bruton* as a case in which the statement was "facially incriminating," and "'expressly implicat[ed]' the defendant as his accomplice."  *Richardson*, 481 U.S. at 207-08 (quoting *Bruton*, 391 U.S. at 124 n.1).  *Bruton* prohibits use of a codefendant's statement when "there was not the slightest doubt that it would prove 'powerfully incriminating'"; in contrast, *Richardson* allowed a confession that "was not incriminating on its face, and became so only when linked with evidence introduced later at trial."  *Richardson*, 481 U.S. at 208 (quoting *Bruton*, 391 U.S. at 135).  *Richardson* held that "the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to

his or her existence." *Id.* at 211.  In contrast to *Richardson*, the Supreme Court held in *Gray* that *Bruton* prohibits admission of a codefendant's redacted confession when the defendant's name is replaced with "an obvious indication of deletion, such as a blank space, the word 'deleted,' or a similar symbol"; such a confession refers directly to the existence of the defendant, and presents a danger close enough to that in *Bruton* to similarly justify exclusion.  *Gray v. Maryland*, 523 U.S. 185, 192, 195 (1998).

In *Verduzco-Martinez*, the Tenth Circuit held that a codefendant's statement redacted by the substitution of a neutral pronoun or phrase does not violate *Bruton*, when it is not obvious from the confession as a whole that the redacted term refers to the defendant.  *United States v. Verduzco-Martinez*, 186 F.3d 1208, 1214 (10th Cir. 1999) (approving substitution of defendant's name with "another person").  The Tenth Circuit stated that incrimination of the defendant in this case was "only by reference to evidence other than the redacted statement." *Id.*  In *Verduzco-Martinez*, the co-defendant's redacted statement did not identify the defendant or direct the jury's attention to him, nor did it obviously indicate that the statement had been altered.  *Id.*  Although the redacted statement inferentially incriminated the defendant when considered in conjunction with other evidence, there was no *Bruton* violation.  *Id.* at 1215.  The Tenth Circuit later emphasized that the *Bruton* rule is limited to "those few contexts" in which a statement is "directly inculpatory"; in contrast, *Bruton* does not prohibit use of statements that are "only inferentially incriminating."  *United States v. Nash*, 482 F.3d 1209, 1218 (10th Cir. 2007) (internal quotation marks omitted).

The redacted version of Brandi's statement does not include any reference to Matthew's involvement, or to the involvement of any other person in such a way that the jury would assume that person was Matthew.  *See Richardson*, 481 U.S. at 211 (holding no confrontation violation

by admission of redacted confession eliminating reference to defendant); *see also Gray*, 523 U.S. at 196-97 (suggesting that substitution of "a few other guys" for names would have been permissible redaction); *United States v. Ramos-Cardenas*, 524 F.3d 600, 609 & n.6 (5th Cir. 2008) (suggesting approval of use of indefinite phrase or substitution of singular pronoun for plural).  Brandi's statement does not directly inculpate Matthew.  Nor would Brandi's redacted statement obviously indicate to the jury that it has been altered.  *See Verduzco-Martinez*, 186 F.3d at 1214.  The Court concludes that use of Brandi's redacted statement would not violate the Confrontation Clause.  *Bruton* and related cases do not support Defendants' motion for severance.

The Government attached a copy of Matthew's statement to its response.  [Doc. 74-2]  Although Defendants make the conclusory assertion that Matthew's statement inculpates Brandi, Defendants do not identify any respect in which it does so.  Having reviewed the statement, the Court agrees with the Government that Matthew's statement does not implicate Brandi.  No *Bruton* problem arises, and the prospect of introducing Matthew's statement at trial provides no support for Defendants' severance argument.

### B.  Inability To Elicit Exculpatory Evidence

As the Government observes, Defendants make a conclusory assertion that "Mr. Channon would be unable to elicit exculpatory information from Ms. Channon."  [Doc. 55, p. 5; Doc. 74, p. 5]  If Defendants had provided the substance of any exculpatory testimony Brandi might give, the Court would consider all of the circumstances, including the factors set forth in *United States v. McConnell*, 749 F.2d 1441, 1445 (10th Cir. 1984).  But Defendants provide nothing to aid the Court in assessing the importance of any such testimony, the likelihood of impeachment, the extent of prejudice caused by absence of such testimony, or any other relevant consideration.

Nor is there any affirmation that Brandi would be willing to waive her Fifth Amendment right and testify in a separate trial of Matthew.

In a case in which the defendant gave more information to the district court, the Tenth Circuit nevertheless upheld denial of severance—based on the absence, at the time the motion to sever was filed, of affidavits from the codefendants stating their intention to invoke their Fifth Amendment privilege in a joint trial, stating their intention to testify in a severed trial, and identifying the exculpatory content of their testimony.  *Pursley*, 577 F.3d at 1216; *see Dirden*, 38 F.3d at 1141 n.13 (affirming denial of severance because defendant provided nothing to show that codefendant would have testified, or that codefendant's testimony would have been helpful or exculpatory).  Speculation is insufficient to carry Defendants' burden to justify severance.  *See Pursley*, 577 F.3d at 1216.  Defendants' conclusory suggestion that perhaps Brandi would have exculpatory information and perhaps she would testify if trials were severed, is patently insufficient to carry Defendants' burden to show that severance is warranted.

### C.  Spillover Prejudice and Confusion

Defendants assert that a joint trial would cause "a confusion of the issues and defenses." [Doc. 55, p. 3]   Defendants suggest that the jury may not be able to compartmentalize the evidence as it relates to each of them, and there may be spillover prejudice.  [Doc. 55, pp. 8-9]

With respect to confusion of issues and defenses, the Tenth Circuit presumes that the jury follows instructions and compartmentalizes the evidence as to each defendant.  *United States v. Zapata*, 546 F.3d 1179, 1191-92 (10th Cir. 2008) (holding jury capable of segregating evidence associated with each defendant's individual actions in joint trial against five defendants on multiple counts); *see United States v. Pinto*, 838 F.2d 426, 434 (10th Cir. 1988); *Jones*, 530 F.3d at 1303; 10th Cir. Crim. Pattern Jury Instructions Nos. 1.21, 1.22 (2011).

The Tenth Circuit has "repeatedly held" that a defendant's assertion that there may be spillover prejudice from evidence admitted against a codefendant "fails to rise to the level of actual prejudice" justifying severance. *United States v. Shaw*, 562 Fed. Appx. 593, 601 (10th Cir. 2014) (unpublished); *see Clark*, 717 F.3d at 818-20; *Zapata*, 546 F.3d at 1191.

Defendants also suggest that disparities in the evidence may be a problem. [Doc. 55, pp. 9-10] But "the nearly insuperable rule in this circuit is that 'a defendant cannot obtain severance simply by showing that the evidence against a co-defendant is more damaging than the evidence against herself.'" *United States v. Wardell*, 591 F.3d 1279, 1300 (10th Cir. 2009) (quoting *United States v. Dazey*, 403 F.3d 1147, 1165 (10th Cir. 2005)). Holding that jury instructions and the manner in which the evidence was presented enabled the jury to compartmentalize, the Tenth Circuit rejected a claim that a great disparity in the quantity of evidence against a husband and wife required severance. *Pinto*, 838 F.2d at 434. The Tenth Circuit further held that a disparity in quantity of evidence, without more, cannot justify severance in a conspiracy case. *Id*. In *Zapata*, the Tenth Circuit stated that it has "repeatedly held" that severance is not justified by an argument that one defendant is less culpable than another. *Zapata*, 546 F.3d at 1191; *see also Caldwell*, 560 F.3d at 1221 (affirming denial of severance on defendant's claim of unacceptable risk of guilt by association when 5/6 of the evidence was not relevant to that defendant).

Defendants' conclusory arguments on these points do not support their motion to sever.

### D.  Mutually Antagonistic Defenses

Defendants cite a number of general principles, claiming that it is "quite likely" in a joint trial there will be "defenses which are separate, inconsistent and antagonistic," resulting in "confusion in the minds of jurors and prejudice to the defendant." [Doc. 55, p. 7] They assert

that "irreconcilability is automatic where one defendant's defense is based on the guilt of the other," and severance is "the only means to preserve their rights to a fundamentally fair trial." [Doc. 55, pp. 7-8]  They claim "a high probability of blame shifting in this case."  [Doc. 55, p. 8]

"Mutually antagonistic defenses are not prejudicial *per se*."  *Zafiro*, 506 U.S. at 538.  The Court must engage in a three-step inquiry.  First, the Court must determine whether the two defenses are "'so antagonistic that they are mutually exclusive.'"  *Jones*, 530 F.3d at 1304 (quoting *Pursley*, 474 F.3d at 765).  Second, the Court must consider "whether there is 'a serious risk that a joint trial would compromise a specific trial right … or prevent the jury from making a reliable judgment about guilt or innocence.'"  *Id*. (quoting *Zafiro*, 506 U.S. at 539).  Third, if the defendant shows that his case satisfies the first two factors, the Court must "'weigh the prejudice to a particular defendant caused by joinder against the obviously important considerations of economy and expedition in judicial administration.'"  *Id*. (quoting *Pursley*, 474 F.3d at 765).  The conflict between the defenses "must be such that the jury, in order to believe the core of one defense, must *necessarily* disbelieve the core of the other.'"  *Id*. (quoting *Dazey*, 403 F.3d at 1165).

Defendants fail to set forth any information about their defenses and fail to show any inconsistency, much less that their defenses are "mutually exclusive."  Defendants fail to cite any "specific trial right," or any reason the jury could not reliably judge their guilt.  In absence of any developed argument on the critical points, the Court concludes that the "important considerations of economy and expedition" necessarily outweigh the other side of the scale.

### E.  Comment on Silence

Citing a Fifth Circuit case, *De Luna*, Defendants suggest that either defense attorney would "feel compelled to point out his client's willingness to take the stand with the failure of the

codefendant to testify—a comment on his right to remain silent."  [Doc. 55, p. 6 (citing *De Luna v. United States*, 308 F.2d 140, 143 (5th Cir. 1962)]  Defendants assert:  "In this case, such a threat of prejudice from a joint trial is very real."  [Doc. 55, p. 6]

The Tenth Circuit observed that "the *DeLuna* dictum" has often been cited in support of an assertion that a defense attorney may be obligated to comment on a codefendant's invocation of the Fifth Amendment and that such an obligation requires severance. *United States v. McClure*, 734 F.2d 484, 490 (10th Cir. 1984).  The Tenth Circuit stated:  "We find this frequent citation somewhat curious in that no decision of which we are aware, including *DeLuna*, has ever ordered a severance based upon this supposed 'obligation.'"  *Id*. at 491.  If Defendants' assertion were sufficient to require joint trials, severance could be required in every case.

The Court agrees with the Government's argument on this point, as supported by the Government's quotation from *McClure*:

> We reject the dictum of the *DeLuna* majority and today hold that under no circumstances can it be said that a defendant's attorney is obligated to comment upon a codefendant's failure to testify.  As the Supreme Court has noted, the assertion of the fifth amendment privilege "is properly no part of the evidence submitted to the jury, and no inferences whatever can be legitimately drawn by them from the legal assertion by the witness of his constitutional right."  *Johnson v. United States*, 318 U.S. 189, 196, 63 S. Ct. 549, 553, 87 L. Ed. 704 (1943).  If in fact the invocation of the fifth amendment privilege is of such dimension that it permits no inference of guilt or innocence, it is without probative value on the issue of a defendant's guilt or innocence.  Hence, we reject the notion that under certain circumstances a defense attorney may be "duty bound" to comment upon nonprobative evidence.

*Id*. (citations and footnote omitted).  Defendants' argument provides no support for severance.

### F.  Conclusion on Severance of Trials

The Government estimates that its case in chief will require about one week.  [Doc. 74, p. 2]  Many witnesses will travel from out-of-state.  The evidence on Counts 7-11, under which both Defendants are charged, would have to be presented twice—if Defendants were tried

separately.  The Government asserts that "much of the evidence presented in support of Counts 1 through 6" would also be duplicated if there were separate trials.  [Doc. 74, p. 2]  Much background evidence would be duplicated—including information about the MaxPerks rewards program and signing up for accounts, OfficeMax's investigation and discovery of the suspicious accounts, execution of the search warrant on Defendants' house, and information about the email accounts' use.  [Doc. 74, pp. 2-3]

The Court concludes that two lengthy trials would not serve the interests of judicial economy or expedition.  *See Pursley*, 577 F.3d at 1219 (observing that necessity of two four-day trials weighed in favor of denial of severance); *United States v. Morris*, 2014 WL 3703828, *5 (10th Cir. 2014) (unpublished) (noting two lengthy trials not in interest of judicial economy).

As discussed above, Defendants have offered little in the way of cognizable claims of prejudice.  Weighing any potential prejudice against the considerations furthered by a joint trial, the Court concludes that Defendants have not carried their burden to justify severance.  *See Richardson*, 481 U.S. at 210; *Zafiro*, 506 U.S. at 537; *Jones*, 530 F.3d at 1298.  The Court concludes that the motion to sever Defendants' trials should be denied.

Defendants request an evidentiary hearing.  [Doc. 55, p. 12]  Defendants have had a full and fair opportunity to present relevant facts and arguments and to rebut the Government's submissions.  *See Ary*, 518 F.3d at 782.  The Court concludes that Defendants fail to even raise "factual allegations that are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact are in issue."  *Barajas-Chavez*, 358 F.3d at 1266 (internal quotation marks omitted).  An evidentiary hearing is not warranted.

**IT IS THEREFORE ORDERED** that:

(1)   *Defendants' Joint Motion for a Bill of Particulars* [Doc. 50] is **DENIED**;

(2)   *Defendants' Joint Motion To Suppress Computer Evidence* [Doc. 104] is **DENIED**;

(3)   *Defendants' Joint Motion for Specification of Co-Conspirator Statements and a Pre-Trial Hearing on the Statements' Admissibility* [Doc. 49] is **DENIED**;

(4)   *Defendant's Motion To Sever Counts 7-10 from Count 11 and Supporting Authorities* [Doc. 54] is **DENIED**;

(5)   *Defendants' Motion To Dismiss for Selective Prosecution and Supporting Authorities* [Doc. 51] is **DENIED**;

(6)   *Defendants' Joint Motion To Dismiss* [Doc. 56] is **DENIED**;

(7)   *Defendants' Motion To Sever Defendants and Supporting Authorities* [Doc. 55] is **DENIED**.

_____
**UNITED STATES DISTRICT JUDGE**