FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

JUN 2 4 2015

MATTHEW J. DYKMAN
CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CRIMINAL NO. 13-966 JCH |
| | ) | |
| vs. | ) | Count 1: 18 U.S.C. § 1349: Conspiracy to Commit Wire Fraud; |
| | ) | |
| MATTHEW CHANNON and BRANDI CHANNON, | ) | Counts 2-7: 18 U.S.C. § 1343: Wire Fraud. |
| | ) | |
| Defendants. | ) | |

## SECOND SUPERSEDING INDICTMENT

The Grand Jury charges:

### Count 1

**General Allegations**

1. At all times relevant to this indictment, OfficeMax, a national retailer of office supplies and other products, administered a customer reward program called MaxPerks Rewards.

2. In exchange for purchases made at OfficeMax, customers with MaxPerks Rewards accounts could earn rewards in the form of credit toward future purchases at OfficeMax. Purchases of certain limited categories of items, such as computers, did not earn MaxPerks credit; any type of purchase that did earn MaxPerks credit was called a "qualifying purchase."

3. There were two types of MaxPerks Rewards accounts: MaxPerks Rewards for Business, which were available to any customer, and MaxPerks Rewards for Teachers, which were available only to teachers. For every $500 on qualifying purchases that a Business customer spent at OfficeMax, the customer earned $25 in rewards; for every $75 on qualifying

purchases that a Teacher member spent at OfficeMax, the customer earned $10 in rewards, up to an annual maximum of $100 in rewards.

4.     The terms of the MaxPerks Rewards program limited each customer to one MaxPerks account.

5.     Customers could sign up for a MaxPerks account in person at an OfficeMax store, over the phone, or online. When a customer created an account online, the customer was required to provide his or her name, mailing address, phone number, and email address. The customer also created an account password. The information submitted by the customer would be transmitted via the internet to MaxPerks Rewards computer servers in Illinois.

6.     A customer could access his or her MaxPerk account online by providing either the account number or the email address associated with the account and the password.

7.     To credit a MaxPerks account with a purchase made at OfficeMax, the customer provided the cashier with his or her MaxPerks card or number, or the cashier could look up the customer's MaxPerks number. Details of the purchase would then be routed by wire to MaxPerks Rewards computer servers in Illinois, and the purchase would be eventually credited to the customer's MaxPerks account.

8.     If the customer forgot to provide his or her MaxPerks account during the purchase, the customer could later log in to his or her MaxPerks account online and add the purchase to his or her account. This process was known as an "online adjustment." Until sometime in late September 2010, when OfficeMax made changes to the online adjustment process, a MaxPerks online adjustment required just four pieces of information, which were located on the store receipt: the store number, date, register number, and transaction number. The customer claiming the purchase was not required to supply the amount of the purchase.

9. MaxPerks members could also earn MaxPerks Rewards by recycling used ink and toner cartridges at OfficeMax. The terms of the recycling program were revised periodically, but at all times relevant to this indictment, the recycling program was subject to monthly limits, and in order to receive the ink rewards after January 1, 2010, the MaxPerks Reward member had to spend a certain amount on qualifying purchases at OfficeMax. If a customer did not have a sufficient balance of qualifying purchases, then the issuance of the ink reward would be delayed and could eventually be forfeited if the qualifying purchase balance never reached the required level.

### The Conspiracy

10. Between on or about August 25, 2009, and continuing through on or about June 8, 2011, in the District of New Mexico and elsewhere, Defendants **MATTHEW CHANNNON** and **BRANDI CHANNON** did knowingly, voluntarily, and interdependently conspire and agree to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false pretenses and representations, and to transmit and cause to be transmitted certain wire communications in interstate and foreign commerce for the purpose of executing the scheme, in violation of 18 U.S.C. § 1343; to wit, Defendants conspired to obtain OfficeMax merchandise through the use of MaxPerks Reward certificates to which they were not entitled.

### Manner and Means

11. To further the goals and objects of the conspiracy, Defendants used the following manners and means:

   a. One or both Defendants signed up for more than 5,400 MaxPerks Rewards accounts using fictitious names, mailing addresses, and phone numbers.

b.      The name of a fictitious elementary school was used to create approximately 5,186 of the accounts, all of which were opened under the MaxPerks for Teachers program. Other accounts not containing the name of a fictitious school were opened under the MaxPerks for Business program.

c.      Approximately 5,247 of the MaxPerks Rewards accounts were registered to one of four email addresses that Defendants controlled: teechur12345678@gmail.com, coach12345678@gmail.com, bargle12345678@gmail.com, and garble12345678@gmail.com. To make these four email addresses appear to OfficeMax to be 5,247 unique addresses, one or more periods were inserted between the characters preceding the "@" symbol. In reality, Gmail accounts do not recognize periods within usernames, and so email messages sent to t.e.e.c.h.u.r.1.2.3.4.5.6.7.8@gmail.com and to teechur12345678@gmail.com would be received by the same account.

d.      One or both Defendants would obtain an OfficeMax receipt containing a store number, date, register number, and transaction number. Because only those four pieces of information were required to claim a transaction through an online adjustment, Defendants would use this information to extrapolate store numbers, dates, register numbers, and transaction numbers for other purchases that they had not made. One or both Defendants would access online the MaxPerks accounts that they controlled to claim purchases made by other customers, causing MaxPerks Rewards to be issued to those accounts.

e.      Defendants claimed and attempted to claim through online adjustments approximately 61,557 transactions for MaxPerks accounts that they controlled, with a total claimed purchase value of approximately $1,890,540.

           f.      Defendants would also use their many MaxPerks accounts to evade the limits of the ink cartridge recycling program. Defendants acquired thousands of used ink or toner cartridges at low cost from sellers on eBay and other sources. Defendants presented approximately 26,114 used ink or toner cartridges for recycling at OfficeMax; they also claimed approximately 1,739 additional recycled cartridges for their accounts through online adjustments.

           g.      Defendants relied in large part on the fraudulent online adjustments they claimed using their MaxPerks accounts to generate the balance of qualifying purchases required for the issuance of the ink recycling rewards.

           h.      To avoid detection, Defendants in total traveled to approximately 361 different OfficeMax stores in approximately 28 states to recycle ink cartridges and to redeem the rewards issued to their accounts.

           i.      Defendants often redeemed the MaxPerks Rewards they accrued on their accounts to purchase prepaid Visa or American Express debit cards at OfficeMax, and they could then use those prepaid cards wherever they were accepted.

           j.      Defendants also used the MaxPerks Rewards to purchase merchandise at OfficeMax, which Defendant **MATTHEW CHANNON** would then resell to other individuals.

           k.      Defendant **MATTHEW CHANNON** also sold to other individuals a number of the MaxPerks Rewards certificates that were issued to Defendants' accounts.

           l.      Defendants themselves redeemed, or sold to other individuals who redeemed, MaxPerks Rewards certificates with a total value of approximately $105,191.

In violation of 18 U.S.C. § 1349.

## Counts 2 – 7

1.  Paragraphs 1 through 9 and 11 of Count 1 are incorporated as part of Counts 2 through 7 as if fully restated here.

2.  Between on or about August 25, 2009, through on or about June 8, 2011, in the District of New Mexico and elsewhere, Defendants **MATTHEW CHANNON** and **BRANDI CHANNON** knowingly and intentionally devised a scheme and artifice to defraud and for obtaining money and property by means of materially false pretenses and representations. For the purpose of executing Defendants' scheme and artifice, the listed Defendant knowingly transmitted and caused to be transmitted by means of wire communication in interstate commerce the following writings, signs, signals, pictures, and sounds:

| Count | Defendant | Date | Description |
|---|---|---|---|
| 2 | BRANDI CHANNON | November 22, 2010 | Transmission from OfficeMax retail store to MaxPerks Rewards database crediting the recycling of 19 ink cartridges to MaxPerks Rewards Business account 643138158, under the business name High Speed Stone. |
| 3 | MATTHEW CHANNON | November 22, 2010 | Transmission from OfficeMax retail store to MaxPerks Rewards database crediting the recycling of 20 ink cartridges to MaxPerks Rewards Business account 796198559, under the business name SLC Metro Desk. |
| 4 | BRANDI CHANNON | November 23, 2010 | Transmission from OfficeMax retail store to MaxPerks Rewards database crediting the recycling of recycling 20 ink cartridges to MaxPerks Rewards Business account 658092537, under the business name American Clay Products. |
| 5 | MATTHEW CHANNON | November 23, 2010 | Transmission from OfficeMax retail store to MaxPerks Rewards database crediting the recycling of recycling 20 ink cartridges to MaxPerks Rewards Business account 620354481, under the business name Trighm Law. |

| 6 | **MATTHEW CHANNON** | July 15, 2010 | Transmission via email of five MaxPerks Rewards certificates of $30 each that had been issued to the following accounts:<br><br>Teacher account 796510854, Colonie Elementary School, Colonie, NY, teech.u.r.12.3.45678@gmail.com<br><br>Teacher account 796652713, St. Louis Elementary School, St. Louis, MO, t.eechu.r12.345.6.78@gmail.com<br><br>Teacher account 796740019, Los Angeles Elementary School, Los Angeles, CA, no email address on account<br><br>Teacher account 820053974, Austin Elementary School, Austin, TX, coach.12.3.4.5678@gmail.com<br><br>Teacher account 796724757, Bensenville Elementary School, Bensenville, IL, teechur123.4.5.6.78@gmail.com. |
| 7 | **MATTHEW CHANNON** | July 28, 2010 | Transmission via email of seven MaxPerks Rewards certificates of $100 each that had been issued to the following accounts:<br><br>Teacher account 796543132, New York Elementary School, New York, NY, teechur12.3.4.5.678@gmail.com<br><br>Teacher account 796542357, Riverside Elementary School, Riverside, CA, teech.u.r1.23.4.5.678@gmail.com<br><br>Teacher account 796533919, Wakefield Elementary School, Wakefield, NE, teechur.1234.5.678@gmail.com<br><br>Teacher account 796520477, Pomona |

| | | | Elementary School, Pomona, CA, teech.u.r.12.3.4.5678@gmail.com<br><br>Teacher account 796519177, Charlotte Elementary School, Charlotte, NC, teechur.1.23.4.5678@gmail.com<br><br>Teacher account 796510978, Atlanta Elementary School, Atlanta, GA, teechu.r1.2.3.45678@gmail.com<br><br>Teacher account 796627972, West Palm Beach Elementary School, West Palm Beach, FL, t.eech.u.r.12345.678@gmail.com. |
|---|---|---|---|

In violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2.

## FORFEITURE ALLEGATION

Counts 1 through 7 of this Indictment are incorporated as part of this section of the indictment as if fully re-alleged herein for the purpose of alleging forfeiture to the United States pursuant to U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461.

Upon conviction of any offense in violation of 18 U.S.C. § 1343 or § 1349, Defendants **MATTHEW CHANNON** and **BRANDI CHANNON**, shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461 any property, real or personal, which constitutes or is derived from proceeds traceable to such violation, or a conspiracy to commit such offense. The property to be forfeited to the United States includes, but is not limited, to the following:

MONEY JUDGMENT

    A sum of money equal to at least $105,191.00 in U.S. currency, including any interest accruing to the date of the judgment, representing the amount of money constituting or derived from proceeds of the offense, for which Defendants are jointly and severally liable.

SUBSTITUTE ASSETS

If any of the above described forfeitable property, as a result of any act or omission of Defendants:

    A. cannot be located upon exercise of due diligence;

    B. has been transferred or sold to, or deposited with, a third person;

    C. has been placed beyond the jurisdiction of the Court;

    D. has been substantially diminished in value; or

    E. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c), to seek forfeiture of any other property of Defendants up to the value of the forfeitable property described above.

A TRUE BILL:

/s/
FOREPERSON OF THE GRAND JURY

Assistant United States Attorney