IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                   Cr. No. 13-966 JCH

MATTHEW CHANNON, and
BRANDI CHANNON,

      Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' *Joint Motion To Dismiss Indictment*. [Doc. 177]  The Government filed a response [Doc. 203], and Defendants filed a reply [Doc. 223].  After discussion of this issue at the July 7, 2015 pretrial conference, the Court ordered supplemental briefing.  The Government and Defendants filed supplemental briefs.  [Docs. 230, 233]  Having considered the pleadings, briefs, and relevant law, the Court concludes that the motion to dismiss will be denied.

## DISCUSSION

The Second Superseding Indictment charges Defendants with conspiracy and a total of six counts of wire fraud.  18 U.S.C. § 1343.  [Doc. 197 (filed 6/24/15)]  The Government limited its theory to one "specific type of scheme to defraud," a scheme to obtain money or property by means of false or fraudulent pretenses, representations, or promises.  *See United States v. Zar*, 790 F.3d 1036, 1050 (10th Cir. 2015); *United States v. Kalu*, 791 F.3d 1194, 1203 & n.11 (10th Cir. 2015).

Defendants argue in their motion to dismiss that the objective of the alleged scheme was to obtain MaxPerks Rewards, which do not constitute "property" in the hands of OfficeMax under *Cleveland v. United States*, 531 U.S. 12, 20 (2000).[1]  Defendants contend that § 1343 therefore does not reach fraud in obtaining MaxPerks Rewards.  *See id*.

The Government states in its supplemental brief that it will limit its case to the theory that the objective of Defendants' scheme was to obtain merchandise from OfficeMax.[2]  The Government argues that:  Defendants' ultimate goal was to obtain OfficeMax merchandise, through the use of MaxPerks Rewards to which they were not entitled; the acquisition of MaxPerks Rewards was just one intermediate step in the scheme; and Defendants' scheme did not reach fruition until OfficeMax merchandise had been obtained.  *See Schmuck v. United States*, 489 U.S. 705, 712-15 (1989).

The Court observes that the law is complicated, and the issue raised under *Cleveland* cannot be resolved without determining the extent of the fraudulent scheme with which Defendants are charged.  The Supreme Court held in *Schmuck*:  "The relevant question at all times is whether the mailing is part of the execution of the scheme as conceived by the perpetrator at the time . . . ."  *Id*. at 715.  *Schmuck* held that the defendant's scheme in rolling back car odometers and selling to dealers at inflated prices "did not reach fruition until the retail dealers resold the cars and effected transfers of title"; thus the dealers' mailing of title-registration applications after the cars were resold was "part of the execution of the fraudulent scheme."  *Id*. at 712.  Depending on the allegations made, and the proof presented, it must be

---

[1] Since the first two elements of the mail fraud statute and wire fraud statute are identical, *Cleveland*'s holding regarding mail fraud applies equally to wire fraud.  *See Pasquantino v. United States*, 544 U.S. 349, 355 n.2 (2005); *United States v. Welch*, 327 F.3d 1081, 1104 (10th Cir. 2003).

[2] "The United States is willing to limit itself—and indeed, is planning to do so, absent contrary guidance by the Court—to proof and argument at trial that the property to be obtained by the scheme was OfficeMax merchandise." [Doc. 230, p. 14]

determined whether something is "'a step in [the] plot.'" *Id*. at 710-11 (quoting *Badders v. United States*, 240 U.S. 391, 394 (1916)).  *Compare United States v. Primrose*, 718 F.2d 1484, 1489-90 (10th Cir. 1983) (holding that mailings were integral to execution of the fraudulent plans, necessary to complete the scheme, and therefore made before fruition of the scheme), *and United States v. Weiss*, 630 F.3d 1263, 1269-71 (10th Cir. 2010) (holding that overall, ongoing scheme included mailings to complete each loan), *and United States v. Washington*, 634 F.3d 1180, 1183-84 (10th Cir. 2011) (holding that use of Federal Express to send closing documents was a step in the execution of fraudulent mortgage scheme), *with United States v. Redcorn*, 528 F.3d 727, 738-42  (10th Cir. 2008) (holding that subsequent wire transmission of funds was not part of fraudulent scheme, because once defendants deposited embezzled funds into their personal bank accounts "they had accomplished their crime and the funds were available for their personal use").

  Defendants' argument under *Cleveland* depends on their assertion that their fraudulent scheme reached fruition as soon as they acquired MaxPerks Rewards.  The Court disagrees, and concludes that the Second Superseding Indictment alleges that acquisition of MaxPerks Rewards was merely a step in the scheme.  The Second Superseding Indictment charges that obtaining OfficeMax merchandise was "a part of the execution of the scheme as conceived by [Defendants] at the time." *Schmuck*, 489 U.S. at 715.  Since the alleged objective of Defendants' scheme was to obtain merchandise—undisputedly "property"—*Cleveland* does not support Defendants' motion.

  The Government alternatively argues that the MaxPerks Rewards constitute "property" in the hands of OfficeMax.  Given the Court's ruling above, the Court need not reach this alternative argument.

## CONCLUSION

The Court denies Defendants' motion to dismiss the Second Superseding Indictment.

**IT IS THEREFORE ORDERED** that Defendants' *Joint Motion To Dismiss Indictment* [Doc. 177] is **DENIED**.

_____
**UNITED STATES DISTRICT JUDGE**