IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

    vs.                                                 Cr. No. 13-966 JCH/KK

MATTHEW CHANNON, and
BRANDI CHANNON,

        Defendants.

## MEMORANDUM OPINION AND ORDER

        This matter is before the Court on the following motions: *Motion To Exclude Testimony by Defendant Matthew Channon's Proposed Expert Witness or in the Alternative To Require Defendant's Prompt Compliance with Rule 16(B)(1)(C)* [Doc. 185]; *Motion To Exclude Expert Testimony on "Spreadsheet Fallacies" and "Financial Accounting Treatment of 'Max Perks' Rewards"* [Doc. 204]; and *Consolidated Motion To Exclude Testimony by Defendant's Expert Accounting Witness* [Doc. 235]. The Court held an evidentiary hearing on October 28, 2015.

        Having considered the pleadings, briefs, evidence, and relevant law, the Court concludes that the Consolidated Motion To Exclude Testimony by Janet McHard [Doc. 235] should be denied.

        The Government explains that its latest motion [Doc. 235] is intended to contain all of the Government's objections to expert testimony by Janet McHard. The Court will therefore deny as moot the Government's previous two motions to exclude. [Doc. 185; Doc. 204]

## BACKGROUND

Defendant Matthew Channon was indicted on a total of ten counts of wire fraud (Counts 1-10), and one count of conspiracy to commit wire fraud (Count 11). 18 U.S.C. § 1343; 18 U.S.C. § 2; 18 U.S.C. § 1349. Defendant Brandi Channon was indicted on four counts of wire fraud (Counts 7-10), and one count of conspiracy to commit wire fraud (Count 11).

On June 15, 2015, Defendant Matthew Channon filed a *Notice of Intent To Offer Expert Testimony of Janet McHard, CPA*. [Doc. 183] On June 17, 2015, the Government filed a motion to exclude testimony by McHard. [Doc. 185] Matthew filed a response [Doc. 194], the Government filed a reply [Doc. 195] followed by an addendum [Doc. 221], and Matthew filed a response to the addendum [Doc. 222]. On June 26, 2015, the Government filed a motion to exclude McHard from testifying on two topics. [Doc. 204] No response was filed. On July 31, 2015, the Government filed a consolidated motion, including all of its objections to testimony by McHard and requesting a pretrial hearing on admissibility of her testimony. [Doc. 235] On August 14, 2015, Matthew filed a response. [Doc. 237]

On October 28, 2015, the Court held an evidentiary hearing. Testimony was presented from Janet McHard and FBI agent Jeffrey Moon. In accordance with the Court's order, Matthew and the Government filed written closing arguments. [Docs. 254, 255] The Government used three exhibits at the hearing: Exhibit 1 (Channon 3268 to 3271: MaxPerks Fraud Reporting, Original Spreadsheet); Exhibit 2 (Channon 3272 to 3274: MaxPerks Fraud Reporting, Enhanced Spreadsheet); and Exhibit 3 (bar graph on Benford's Law comparison). Exhibit 3 was presented to the Court at the October 28, 2015 hearing. As ordered, the Government provided the Court with a disk containing Exhibits 1 and 2, which the Court received on November 17, 2015. The

exhibits were not officially offered, or admitted, into evidence, but were referred to without objection by both the Government and the defense at the October 28, 2015 hearing.

## LEGAL STANDARDS

### I. *Daubert* and Rule 702

The admission of expert testimony is governed by Federal Rule of Evidence 702 and the Rule's interpretation by the Supreme Court in *Daubert*, *Joiner*, and *Kumho Tire*. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993); *General Elec. Co. v. Joiner*, 522 U.S. 136 (1997); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). Rule 702 was amended in 2000 in response to *Daubert* and *Kumho Tire*. Fed. R. Evid. 702 advisory committee's note. The 2000 amendment affirms the trial court's role as gatekeeper, excluding unreliable expert testimony.[1] *Id.* Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The proponent of the evidence has the burden of showing that expert evidence is admissible, by a preponderance of proof. *Daubert*, 509 U.S. at 592 n.10; *United States v. Orr*, 692 F.3d 1079, 1091 (10th Cir. 2012); Fed. R. Evid. 702 advisory committee's note to 2000 amendment. The trial court has "wide latitude" in exercising its discretion to admit or exclude expert testimony.

---

[1] Rule 702 was further amended in 2011 as part of the restyling of the Rules of Evidence, to make them more easily understood; these changes are "stylistic only" and there "is no intent to change any result in any ruling on evidence admissibility." Fed. R. Evid. 702 advisory committee's note to 2011 amendment.

*Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2004); *see Kumho*, 526 U.S. at 147 ("broad latitude" in determining how to determine reliability and in ultimate reliability determination).

The trial court "'generally must first determine whether the expert is qualified.'" *United States v. Avitia-Guillen*, 680 F.3d 1253, 1256 (10th Cir. 2012) (quoting *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc)). "If the expert is sufficiently qualified, then 'the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology.'" *Id.* (quoting *Nacchio*, 555 F.3d at 1241). Trial courts have the responsibility of ensuring that scientific testimony or evidence is both relevant and reliable. *Daubert*, 509 U.S. at 589. "Relevant evidence 'means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Bitler*, 400 F.3d at 1234 (quoting Fed. R. Evid. 401). The trial court acts as gatekeeper, making "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert* 509 U.S. at 592-93. The gatekeeping function requires a "'sufficiently developed record'" to allow a determination of whether the trial court "'properly applied the relevant law.'" *Avitia-Guillen*, 680 F.3d at 1258 (quoting *United States v. Nichols*, 169 F.3d 1255, 1262 (10th Cir. 1999)).

*Daubert* sets forth a non-exclusive list of factors that may be considered, including: (1) whether the theory or technique can be, and has been, tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the theory is generally accepted in the relevant scientific community. *Daubert*, 509 U.S. at 593-94.

The trial court need not apply all of these factors, and may consider additional relevant factors. *Avitia-Guillen*, 680 F.3d at 1258; *Kumho Tire*, 526 U.S. at 149-50.

The *Daubert* Court emphasized that the inquiry under Rule 702 is "a flexible one." *Daubert*, 509 U.S. at 594. "Its overarching subject is the scientific validity—and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission." *Id.* at 594-95. "The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 595. *Joiner* added that "conclusions and methodology are not entirely distinct from one another." *Joiner*, 522 U.S. at 146. A court need not admit opinion evidence "that is connected to existing data only by the *ipse dixit* of the expert." *Id.* "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Id.*

The Federal Rules encourage the admission of expert testimony. 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 702.02[1] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 2012). The *Daubert* Court recognized the "liberal thrust" of the Federal Rules and their "general approach of relaxing the traditional barriers to 'opinion' testimony." *Daubert*, 509 U.S. at 588 (internal quotation marks omitted). "The presumption under the Rules is that expert testimony is admissible." 4 Weinstein & Berger, *supra,* § 702.02[1] (footnote omitted) (citing cases for "liberal admission"). "A review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note to 2000 amendment. As the Advisory Committee explained, "'the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.'" *Id.* (quoting *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996)). "As the Court in *Daubert* stated: 'Vigorous cross-examination, presentation of contrary evidence, and

careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Id.* (quoting *Daubert*, 509 U.S. at 596). These conventional devices, rather than exclusion under the restrictive and elevated standard set by *Frye*, are "the appropriate safeguards where the basis of scientific testimony meets the standards of Rule 702." *Daubert*, 509 U.S. at 596. "As the ultimate fact-finder, it is the jury that must determine, finally, where the truth in any case lies, and the district judge as gatekeeper may not usurp this function." *United States v. Frazier*, 387 F.3d 1244, 1272 (11th Cir. 2004).

## II. Qualifications of Expert Witnesses

Rule 702 requires the trial court to determine whether the witness is qualified as an expert by knowledge, skill, experience, training, or education. The record must show that the trial court has performed its duty as gatekeeper; the court is not, however, required to "extensively explain" its determinations on witness qualifications. *Avitia-Guillen*, 680 F.3d at 1260; *United States v. Roach*, 582 F.3d 1192, 1207 (10th Cir. 2009) (observing that something more than conclusory statement is required). Rule 702 sets a "liberal standard" for qualifying a witness as an expert. *United States v. Gomez*, 67 F.3d 1515, 1525-26 (10th Cir. 1995); 4 Weinstein & Berger, *supra*, § 702.04[1][a]. "Rule 702 only requires that an expert possess 'knowledge, skill, experience, training, or education' sufficient to 'assist' the trier of fact, which is 'satisfied where expert testimony advances the trier of fact's understanding <u>to any degree</u>.'" *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006) (emphasis added) (quoting 29 Charles Alan Wright & Victor James Gold, *Federal Practice & Procedure* § 6265 (1997 & Supp. 2012)).

It is an abuse of discretion to exclude a witness as an expert if the witness is "generally qualified." 4 Weinstein & Berger, *supra*, § 702.04[1][a] n.6. A witness who "lacks expertise in specialized areas that are directly pertinent to the issues in question" is qualified "if the witness

has educational and experiential qualifications in a general field related to the subject matter of the issue in question." *Id.* § 702.04[1][a]; *see In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994) ("We have eschewed imposing overly rigorous requirements of expertise and have been satisfied with more generalized qualifications."). The trial court has broad discretion to determine the qualifications of a witness. *United States v. Vargas*, 471 F.3d 255, 262 (1st Cir. 2006).

As indicated by the use of the disjunctive "or" in Rule 702, any one of the five bases listed in the Rule may be sufficient to qualify a witness as an expert: "knowledge, skill, experience, training, or education." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 176 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1994); *see* 4 Weinstein & Berger, *supra*, § 702.04[1][c]; 29 Wright & Gold, *supra*, § 6265. None of the bases is essential, and none is ranked more highly than another. *United States v. Anderson*, 446 F.3d 870, 875 (8th Cir. 2006). The focus is on whether the witness has sufficient expertise to assist the jury. 4 Weinstein & Berger, *supra*, § 702.04[1][d]. Courts find witnesses qualified as experts based on "only a relatively modest degree of specialized knowledge." 29 Wright & Gold, *supra*, § 6265.

"Gaps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility." *Robinson*, 447 F.3d at 1100 (internal quotation marks omitted). The factual basis of an expert's opinion goes to credibility, not the admissibility of the testimony; the opposing party can challenge the opinion on cross-examination. *First Union Nat'l Bank v. Benham*, 423 F.3d 855, 862 (8th Cir. 2005).

**DISCUSSION**

The Government had earlier objected that the notice of McHard's expert testimony was untimely under the Court's scheduling order and too close to the trial date. [Doc. 185, pp. 5-6] At the beginning of the October 28, 2015 evidentiary hearing, the Government stated that it was no longer pressing this argument because trial had been continued. [Tr. 10-28-15, pp. 5-7] Even if Defendant's discovery were late or insufficient, it would be the Government's burden to "demonstrate" prejudice—either from the timing or the adequacy of Defendant's disclosure. *See United States v. Kenyon*, 481 F.3d 1054, 1062 (8th Cir. 2007). Summarily asserting prejudice would not satisfy the Government's burden to demonstrate prejudice. *See United States v. Apperson*, 441 F.3d 1162, 1204 (10th Cir. 2006) (regarding denial of motion to continue). The purposes of Rule 16 include minimizing surprise from unexpected expert testimony and allowing a party to prepare for cross-examination and presentation of opposing experts. Fed. R. Crim. P. 16 advisory committee's note to 1993 amendment. Given the continuance of the trial date to January 11, 2016, the Government does not argue that the purposes of the Rule are frustrated. Even if there were any violation, the Court would have been required to impose the least severe sanction that would fulfill the purposes of Rule 16. *United States v. Brown*, 592 F.3d 1088, 1090 (10th Cir. 2009). Exclusion of expert evidence "is almost never imposed in the absence of a constitutional violation or statutory authority for such exclusion." *United States v. Charley*, 189 F.3d 1252, 1262 (10th Cir. 1999). The Court concludes that the Government has been given ample time to prepare to meet McHard's testimony; there is no justification for the extreme sanction of exclusion.

The Government had also objected that the notice was deficient in failing to provide a summary of McHard's testimony and opinions. [Doc. 185, pp. 2-5; Doc. 235, pp. 3-4] Having

heard McHard's testimony at the evidentiary hearing, the Government withdrew its objection on the ground of inadequate notice. [Doc. 255, p. 1] The Court concludes that the Government has been provided with adequate notice.

## I.  Qualifications of McHard as an Expert

Defendant Matthew has provided an extensive and detailed resume of McHard's qualifications. [Doc. 183-1] She has a Master's degree in Business Administration. She is a Certified Public Accountant, Certified Fraud Examiner, Master Analyst in Financial Forensics, and Certified Global Management Accountant. She has been employed since 2009 as a founding partner in an accounting firm exclusively dedicated to forensic and investigative accounting. [Doc. 183-1; Tr. 10-28-15, p. 9] She is a member of a number of professional associations and committees, has spoken at numerous professional meetings, and has testified about twenty times and been retained as an expert hundreds of times. [Tr. 10-28-15, pp. 97-99] McHard testified that she had received training and education on Benford's Law from a leading expert in the field, Dr. Mark Nigrini, in addition to other training and courses. [Tr. 10-28-15, pp. 26-28]

The Government argues that although McHard is a qualified forensic accountant, that qualification does not make her competent to testify "about any sort of data that might be found in a spreadsheet" without her having a "retailer-specific background." [Doc. 255, p. 10] The Court believes that the Government takes too restrictive view of expert qualifications. "It is not required that experts be 'blue-ribbon practitioners' with optimal qualifications." *Vargas*, 471 F.3d at 262 (quoting *United States v. Mahone*, 453 F.3d 68, 71 (1st Cir. 2006)). To be qualified as an expert, McHard need not have the particular training or experience which might be the most appropriate. *See* 4 Weinstein & Berger, *supra*, § 702.04[1][a]. The focus is on whether the witness has sufficient expertise to assist the jury. *Id*. § 702.04[1][d]. This requirement is

9

satisfied if expert testimony "advances the trier of fact's understanding to any degree." 29 Wright & Gold, *supra*, § 6265 (emphasis added). There is a strong and undeniable preference in the Federal Rules for admitting any evidence having some potential for assisting the jury. The Government suggests that there is a gap in McHard's qualifications or knowledge, particularly because she "has no knowledge of the specific point of sale or accounting systems that OfficeMax uses." [Doc. 235, p. 11] But "[g]aps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility." *Robinson*, 447 F.3d at 1100 (internal quotation marks omitted). This issue is one that the Government may explore on cross-examination at trial; some lack of familiarity is not a reason to refuse to qualify her as an expert. *See First Union Nat'l Bank*, 423 F.3d at 862 (factual basis goes to credibility, not admissibility). As Matthew argues, it cannot be that only an OfficeMax employee has sufficient familiarity with OfficeMax's system to testify as an expert. The Government may seek to expose limitations in McHard's understanding at trial.

The Government argues that McHard is not qualified, without a retailer-specific background, to testify about whether the data made sense to her—by testifying, for instance, that she "spot-checked" some data for reasonableness. [Doc. 255, pp. 10-11] The Government recognizes that it provided evidence in discovery that it does not intend to use at trial. [Doc. 235, p. 10] Because it was apparently not clear which evidence the Government intends to present at trial, McHard's statements may have been directed to data the Government provided in discovery but will not present at trial; this issue will not then arise. If, however, the defense does attempt to have McHard give such an opinion, based on evidence actually presented, the Government can object at that time; the defense will have to demonstrate that McHard has sufficient qualification (and information) to give such an opinion on that particular evidence. It may be that McHard's

testimony will be subject to exclusion of such broad and vague statements, and limitation to areas in which she has sufficient expertise. This determination, however, must be left until trial when the focus of such opinions has been clarified; without being fully informed on exactly what evidence is involved and what opinion the defense seeks to elicit, the Court cannot decide this issue.

Rule 702 sets a "liberal standard" for qualifying a witness as an expert. *Gomez*, 67 F.3d at 1525-26. McHard may be qualified as an expert based on a relatively modest degree of specialized knowledge. It is the Court's role to make a preliminary determination of whether McHard has sufficient expertise to assist the jury; it is the jury's role to assess what weight to give her opinions. *Cruz-Vazquez v. Mennonite Gen. Hosp.*, 613 F.3d 54, 59 (1st Cir. 2010). McHard is a CPA with extensive experience in her own accounting firm. *See United States v. Huether*, 673 F.3d 789, 797 (8th Cir. 2012) (holding agent with ten years of specialized computer experience qualified as expert); 4 Weinstein & Berger, *supra*, § 702.04[1][a] n.6 (stating it is abuse of discretion to exclude witness who is "generally qualified").

The Court concludes that McHard possesses sufficient knowledge, experience, training, and education to assist the jury. *See Robinson*, 447 F.3d at 1100; *Vargas*, 471 F.3d at 262; 29 Wright & Gold, *supra*, § 6265. The Court finds that McHard has "'achieved a meaningful threshold of expertise'" and is qualified to testify as an expert on the proposed subjects. *Levin v. Dalva Bros., Inc.*, 459 F.3d 68, 78 (1st Cir. 2006) (quoting *Prado Alvarez v. R.J. Reynolds Tobacco Co.*, 405 F.3d 36, 40 (1st Cir. 2005)). The Government is entitled to explore at trial any perceived gaps in McHard's qualifications or knowledge.

**II. Reliability and Relevance of McHard's Testimony**

The Government had earlier objected to proposed testimony on the treatment of MaxPerks Rewards in OfficeMax's accounting records. [Doc. 204, pp. 3-4] The Government suggested at the evidentiary hearing that this objection was mooted by the Court's denial of Defendants' motion to dismiss the indictment on the "property" issue. [Doc. 239 (filed 8-21-15); Tr. 10-28-15, p. 6; *see* Doc. 255, p. 2] Matthew's written closing argument agrees that trial testimony on this topic will no longer be necessary or relevant. [Doc. 254, pp. 7-8] The Court concludes that such testimony will not be admissible at trial, because it would not be relevant. OfficeMax merchandise constitutes "property" under the wire fraud statute. The Government has committed to limiting proof and argument at trial to the theory that the property to be obtained by the fraudulent scheme was OfficeMax merchandise (not merely MaxPerks Rewards); the Government reaffirmed this limitation of theory in its written closing argument. [Doc. 239, pp. 2-3; Doc. 255, p. 2] Thus testimony on whether MaxPerks Rewards constitute "property" will not be relevant or admissible at trial.

The remaining topics on which Matthew proffers McHard's expert testimony are Benford's Law and "spreadsheet fallacies." The Government argues that McHard's testimony should be excluded as irrelevant, not helpful to the jury, and barred by Rule 403. The Court must also determine whether the proposed testimony on these topics is both relevant and reliable under Rule 702. *Avitia-Guillen*, 680 F.3d at 1256; *Bitler*, 400 F.3d at 1234.

**A. Benford's Law**

Matthew argues that testimony on Benford's Law is admissible, because McHard's methodology is generally accepted by the forensic accounting community, as McHard testified. [Doc. 10-28-15, p. 88] The theories set forth by Dr. Mark Nigrini, a leading expert in the field,

are referenced in the fraud examiners' manual—the guiding document for those in this field—and have been written up in several peer-reviewed journals, including the Journal of Accountancy and Fraud Magazine. [Tr. 10-28-15, pp. 26-28, 88] McHard testified that it was her understanding that the software she used was developed by Nigrini and she believed that use of that software was generally accepted in the forensic accounting community. [Tr. 10-28-15, pp. 88-89] McHard testified that Benford's Law is used by forensic accountants, fraud examiners, accountants, and auditors to analyze data and identify whether there are anomalies requiring investigation and suggesting that the data are unreliable. [Tr. 10-28-15, pp. 83-85]

To run a Benford's Law analysis, McHard testified that numbers are copied and pasted into a spreadsheet created by Nigrini; he has set up the formulas to render an instantaneous output. [Tr. 10-28-15, pp. 87-88] Benford's Law states that each digit should occur in predictable frequency in a set of naturally occurring numbers. Analysis of some of the Government's spreadsheet data, however, showed deviation from the predicted frequencies—as demonstrated in one example shown in Exhibit 3. According to McHard, the spreadsheets contain such a large number of entries that they should conform to Benford's Law. [Tr. 10-28-15, pp. 85-87] McHard testified that her work on Benford's Law in this case was approved by Dr. Nigrini. [Tr. 10-28-15, p. 90] According to McHard, testimony on Benford's Law as applied to the spreadsheets would indicate that there is a problem with the data, undermining the reliability of the spreadsheet information.

The Court finds that the evidence shows that Benford's Law and the software used by McHard are generally accepted in the relevant community, have been tested, and have been subjected to peer review. The Court concludes that such testimony is sufficiently reliable to be admitted.

The Court also finds that the proffered testimony on Benford's Law requires "some specialized knowledge or skill or education that is not in possession of the jurors." *United States v. Johnson*, 617 F.3d 286, 293 (4th Cir. 2010) (internal quotation marks omitted). Knowledge of computers and Excel programs varies widely, but the proffered testimony is "beyond the ken of people of ordinary intelligence." *United States v. Davis*, 457 F.3d 817, 824 (8th Cir. 2006). It appears that some of McHard's testimony may also be used to present background information to the jury and explain principles and evidence, which are permissible purposes under Rule 702. 4 Weinstein & Berger, *supra*, § 702.02[2]; Advisory Committee Note to Rule 702; *United States v. Mulder*, 273 F.3d 91, 102 (2d Cir. 2001).

The Court concludes that testimony on Benford's Law is relevant and will assist the jury in understanding and evaluating the Government's evidence.

The Government argued in its motion for exclusion that it had no way of knowing which data McHard reviewed under Benford's Law, and therefore it was impossible to determine whether her testimony would meet the standards for admissibility. [Doc. 235, pp. 7-8] The Government's written closing argument states that additional Benford's Law analyses were presented to the Government by the defense just before the written arguments were due, preventing adequate evaluation; the Government argues that some of these analyses—which may have been run on spreadsheets which the Government will not use at trial—are irrelevant. [Doc. 255, pp. 3-4] It is not clear to the Court that the defense or McHard should have known which of the massive discovery provided would be used at trial by the Government. The Government's argument on this point is not a reason to exclude all of McHard's testimony pretrial. The Court presumes that by the time McHard's testimony is presented at trial, it will have become clear

14

which data the Government is using and that McHard's testimony will be limited to such evidence.

The Court concludes that Defendant Matthew has carried his burden of showing that McHard's testimony on Benford's Law is admissible.

### B. Spreadsheet Fallacies

Matthew proposes to present testimony by McHard on the nature and reliability of spreadsheets, together with limitations in their probative value: "spreadsheet fallacies." Matthew argues that expert testimony will be helpful to the jury in assessing, weighing, and understanding the massive Excel spreadsheets which the Government intends to present at trial. He argues that expert testimony will aid the jury in evaluating the reliability and foundation of these spreadsheets, which in part depends on knowing the specific queries used to populate the spreadsheets and understanding the inherent weakness of spreadsheets as evidence.

The Government argues that McHard's opinions are often based on misunderstanding of the data. [Doc. 255, pp. 5-10] The Government states that the "OfficeMax data from which the evidence and exhibits are drawn [are] not self-explanatory" and "the case agent has spent more than a hundred hours learning about the data from OfficeMax personnel." [Doc. 255, p. 5] Rather than being a reason to exclude McHard's testimony, the Court concludes that the difficulty in understanding the data provides reason to admit McHard's testimony; the jury does not have one hundred hours to learn what the data represent. Testimony from a defense expert is admissible to explain and challenge the data. The danger otherwise is that an expert for the Government may not point out inconsistencies or unreliability of the Government's data. If McHard's opinions are based on misunderstanding or errors, the Government can attack those opinions on cross-examination or rebuttal; *Daubert* specifically envisions that the opposing party

15

will challenge expert evidence both through "[v]igorous cross-examination" and through "presentation of contrary evidence." *Daubert*, 509 U.S. at 596. The function of cross-examination is to point out such errors to the jury; if misunderstanding or errors are identified, such cross-examination may well undermine the expert's credibility and prevent reliance on her opinions. It is the jury's province to assess and evaluate the reliability of the expert's opinions. The Court concludes that subjecting the evidence to an opposing expert is the course best suited to giving the jury the ability to decide the case. *United States v. Mitchell*, 365 F.3d 215, 245-47 (3d Cir. 2004); *see United States v. Velasquez*, 64 F.3d 844, 852 (3d Cir. 1995) (stating that opposing expert assists jury in determining proper weight to give other party's expert testimony). In addition, by the time McHard's testimony is presented at trial, the Government may have clarified the meaning and interpretation of the data, to the benefit of both the jurors and McHard.

"[I]t is inconsistent with both policy and precedent to make the admissibility of all expert testimony depend upon a showing that the expert's testimony is completely reliable in every respect." 29 Wright & Gold, *supra*, § 6266, at 290-91. Any asserted deficiencies in McHard's assessment of the spreadsheets may be explored on cross-examination or rebuttal. *See Daubert*, 509 U.S. at 596; *United States v. Mitchell*, 365 F.3d 215, 247 (3d Cir. 2004) (stating that reliability of expert evidence "is as much for the jury (in the context of courtroom adversary testing) as it is for the court (in the context of a *Daubert* hearing)").

The Court concludes that the proffered testimony requires "some specialized knowledge or skill or education that is not in possession of the jurors." *Johnson*, 617 F.3d at 293 (internal quotation marks omitted). Knowledge of Excel programs and spreadsheets varies widely, but the proffered testimony is "beyond the ken of people of ordinary intelligence." *Davis*, 457 F.3d at 824.

Under *Daubert*'s liberal definition of what constitutes reliable and scientific knowledge, the Court concludes that McHard's testimony is admissible to challenge the reliability of the Government's spreadsheet evidence.  *See United States v. Rodriguez-Felix*, 450 F.3d 1117, 1125 (10th Cir. 2006).  Such testimony will assist the jury in deciding how to assess the weight and credibility of this evidence.  The Court concludes that Matthew has carried his burden of showing that the proposed testimony on "spreadsheet fallacies" is relevant and reliable.  Such testimony is admissible.

### III.  Other Objections

The Government argues generally that some of McHard's testimony will not be relevant because it relates to evidence which the Government does not intend to use at trial.  [Doc. 235, pp. 9-10; Doc. 255, pp. 3, 9-10]  As noted above, it appears that the defense and McHard were not aware of which of the massive discovery the Government intends to use at trial.  Testimony on evidence not presented would of course be irrelevant and inadmissible.  *See* Fed. R. Evid. 402.  The Court assumes, however, that by the time McHard's testimony is presented at trial, it will have become clear which evidence the Government is using.  The Court will limit McHard's trial testimony to such evidence.

The Government argues that McHard should be prevented from speculating about what "*could* have gone wrong with the data."  [Doc. 255, p. 5; Doc. 235, p. 12]  The Court agrees that speculation is not admissible and cautions the defense on this point.

Finally, the Government argues that McHard's testimony will cause confusion and will "take a simple concept and complicate it for the jury."  [Doc. 235, p. 13]  The Court notes that this argument appears inconsistent with the Government's assertions that the "OfficeMax data from which the evidence and exhibits are drawn [are] not self-explanatory" and "the case agent

17

has spent more than a hundred hours learning about the data from OfficeMax personnel." [Doc. 255, p. 5] The Government cannot have it both ways. If the Government believes that McHard's testimony causes confusion, it will be the Government's role to elucidate matters on cross-examination or rebuttal. At any event, the Court finds that the probative value of McHard's testimony is not "substantially" outweighed by a danger of: unfair prejudice, confusing the issues, misleading the jury, undue delay, or wasting time. *See* Fed. R. Evid. 403.

## CONCLUSION

The Court concludes that Defendant Matthew Channon has carried his burden to demonstrate that expert testimony by Janet McHard is admissible under *Daubert* and Rule 702.

**IT IS THEREFORE ORDERED** that:

(1) *Motion To Exclude Testimony by Defendant Matthew Channon's Proposed Expert Witness or in the Alternative To Require Defendant's Prompt Compliance with Rule 16(B)(1)(C)* [Doc. 185] is **DENIED as moot**;

(2) *Motion To Exclude Expert Testimony on "Spreadsheet Fallacies" and "Financial Accounting Treatment of 'Max Perks' Rewards"* [Doc. 204] is **DENIED as moot**; and

(3) *Consolidated Motion To Exclude Testimony by Defendant's Expert Accounting Witness* [Doc. 235] is **DENIED**.

_____
**UNITED STATES DISTRICT JUDGE**